NO. 07-01-0085-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

MAY 22, 2002
_____

ELIZABETH MOSER Individually and as INDEPENDENT
EXECUTRIX of the ESTATE OF MALCOLM MOSER, DECEASED,

Appellant

v.

DONALD L. DAVIS and DONALD L. DAVIS, P.C.,

Appellee
_____

FROM THE 222ND DISTRICT COURT OF OLDHAM COUNTY;

NO. OCI-99L-041; HON. WILLIAM R. SHAVER, PRESIDING
_____

Before QUINN, REAVIS and JOHNSON, JJ.

Appellant, Elizabeth Moser, individually and as independent executrix of the estate of Malcolm Moser, deceased (collectively referred to as Moser) appeals from a take nothing judgment entered in favor of Donald L. Davis and Donald L. Davis, P.C. (collectively referred to as Davis). Via five issues, Moser contends that 1) Kelli Walden (Kelli), Davis' secretary, was acting in the course and scope of her employment as a secretary of Davis on August 19, 1997, as a matter of law, 2) the trial court found, as a matter of law, that Walden acted within the scope of her employment, 3) the finding that Walden was outside

the course and scope of her employment in creating, drafting and executing wills on behalf of the Mosers and without Davis knowing of it was against the great weight and preponderance of the evidence so as to be manifestly unjust, 4) the trial court erred in submitting issue two without a date specific in the charge, and 5) the finding that Davis was not negligent was against the great weight and preponderance of the evidence so as to be manifestly unjust. For the following reasons, we affirm.

### *Background*

The underlying suit involves a legal malpractice claim asserted by Moser against Davis, the attorney she hired to prepare reciprocal wills for her and her late husband Macolm. Because Malcolm did not inform Davis of the identity of the proposed beneficiaries of a trust that was to be included in the wills, the documents were not executed before Malcolm was admitted to the hospital in August of 1997. Upon his release from same, Moser contacted Kelli and told her the wills needed to be finalized because she was unable to find her husband's prior will.

At the time of the call from Moser, Davis was out-of-town. Kelli told Moser of that fact. Nevertheless, Moser insisted upon the completion of the wills. Furthermore, she delivered to Kelli the names of various people who Malcolm allegedly selected as the trust beneficiaries. At that point, Kelli prepared same for signature by the Mosers without informing Davis, and in preparing it, she selected the provisions to include therein. The two testators executed the documents in Davis' office on the following day, again without his knowledge, and Kelli obtained the witnesses necessary to complete the task. So too did she notarize the signatures placed on the wills.

2

Again, Davis was out-of-town throughout the transaction. Furthermore, Kelli had not told him of the Mosers' desire to complete the documents. Nor did she tell him that the wills had been executed once he returned, even though they were being kept in the firm's safety-deposit box.

Subsequently, Malcolm died. At that point, it was discovered that his will did not dispose of his estate as he allegedly desired. The assets were placed in trust and not given to Moser. This resulted in suit against Davis for malpractice. A point of contention at trial concerned whether Kelli acted within the course and scope of her employment when she *sua sponte* created the documents and placed them in the safety-deposit box without Davis' knowledge or consent. The jury found that she did not, and Moser appealed.

### *Issue One*

Moser contends, via issue one, that she proved, as a matter of law, that Kelli was acting within the course and scope of her employment when she prepared and had them execute the wills. We overrule the point.

*Standard of Review*

The standard of review applicable to claims of legal sufficiency follows. The appellate court must examine the record for evidence that supports the finding while ignoring that which contradicts it, and, if there is no evidence to support the finding, the court must then examine the entire record to determine if a contrary proposition is established as a matter of law. *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex. 1982); *Texas & N.O.R. Co. v. Burden*, 146 Tex. 109, 203 S.W.2d 522, 530 (1947); *Raw Hide Oil & Gas,*

*Inc. v. Maxus Exploration Co.*, 766 S.W.2d 264, 275-276 (Tex. App. – Amarillo 1988, writ denied).

Next, employers are liable for the negligent acts of their employees if the employees' actions fall within the course and scope of their employment. *Baptist Memorial Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998); *Hedley Feedlot, Inc. v. Weatherly Trust*, 855 S.W.2d 826, 837 (Tex. App.--Amarillo 1993, writ denied) (discussing agents). Though easily stated, the rule is not easily applied. For instance, it is not enough to simply ask whether the employee was on the company payroll or company clock when the acts were committed. Nor is it enough to ask whether the employer provided the means or instruments utilized by the employee to commit the tort. Though each of the foregoing may be indicia pertinent to answering the test, Restatement (Second) of Agency §229(2)(b) & (h) (1958)*,* they are not the test itself. Instead, the latter is a tripartite affair wherein each element must be satisfied. And, those elements are that the act must be committed 1) within the scope of the general authority of the servant, 2) in furtherance of the employer's business, and 3) for the accomplishment of the object for which the servant is employed. *Robertson Tank Lines, Inc. v. Van Cleave*, 468 S.W.2d 354, 357 (Tex. 1971); *Gant v. Dumas Glass & Mirror, Inc.*, 935 S.W.2d 202, 212 (Tex. App.--Amarillo 1996, no writ). If the circumstances of the particular case establish the existence of each element, then liability may be imposed even though the specific act was unauthorized or done contrary to express orders. *Hooper v. Pitney Bowes, Inc.*, 895 S.W.2d 773, 777 (Tex. App.--Texarkana 1995, writ denied).

4

Next, with regard to the element of general authority, it is important to note that the conduct must be of the same general nature as that authorized by the employer or incidental to the conduct so authorized. RESTATEMENT (SECOND) OF AGENCY §229(1). As mentioned in the Restatement, "a servant is authorized to do anything which is reasonably regarded as incidental to the work specifically directed or which is usually done in connection with such work." *Id.* at comment (a). This implicitly obligates us to compare the conduct undertaken by the employee with that normally within the realm of the authority granted employees hired for similar purposes. See *id.* at §229(2)(a) (stating that whether or not 1) the act is one commonly done by such servants, 2) the master has reason to expect that such an act will be done, and 3) the similarity in quality of the act done to that act authorized are factors to consider in assessing the scope of employment). With this said, we turn to the issue at hand.

The record discloses that Kelli was hired as a secretary or administrative assistant (to be politically correct). Nowhere does it illustrate, however, that she was an attorney or otherwise licensed to practice law. Thus, as a secretary, she had the authority to do, and did, things secretarial in nature. For instance, she often typed wills and other legal documents under the supervision of Davis, received information from clients to provide to Davis, provided documents to clients from Davis, executed documents at the direction of Davis, notarized wills, obtained witnesses for the executions of wills, and some times explained wills to clients.[1]

---

[1]The extent to which she explained the documents she typed to clients went undeveloped. In short, whether her comments consisted of simple descriptions of the instruments or explanations of their legal effect is unknown. And, because it is unknown, we cannot simply assume that she undertook to advise those

5

Yet, again, nowhere does either Davis or Kelli testify that Kelli was hired or entitled to practice law. Indeed, Davis testified that though she typed wills and arranged to have them executed, she was never authorized to draft one, deliver it to the client, and then execute it on her own. Similarly, Kelli acknowledged that Davis would not approve of her doing so. That Davis did and would not approve of such conduct is of extreme import because in so acting she effectively would be practicing law. *See In re Nolo Press/Folk Law Inc.*, 991 S.W.2d 768, 770 (Tex. 1999) (stating that the practice of law, which can only be done by members of the State Bar, includes the provision of advice or the rendering of any service requiring the use of legal skill or knowledge, such as preparing a will); *Olson v. Estate of Watson*, 52 S.W.3d 865, 868 (Tex. App--El Paso 2001, no pet.) (noting that the use of one's knowledge, training, and experience in the law for the purpose of creating wills and other legal documents involves the practice of law). And, no one presented evidence suggesting that practicing law was the type of conduct secretaries were generally authorized to do or incidental to their general authority. Nor did anyone present evidence illustrating that Davis hired Kelli to practice law or some how bestowed upon her the general authority to do so as a secretary.

In short, the record is barren of evidence illustrating that Kelli, as a secretary, had the discretion or authority to render advice and make legal decisions on behalf of Moser or any other client of Davis. And, it is that authority and the right to exercise same on behalf of others that distinguishes between an attorney and secretary. It cannot be denied that legal secretaries and their attorneys work closely together. Nor can it be denied that

---

with whom she spoke about the legal effect or ramifications of those documents.

6

much of the ministerial work done in a law office is performed by the secretary. But, that the two work closely together and the secretary often converts the attorney's thought processes and oral directives into a tangible work-product does not mean that the secretary is practicing or can practice law, as that term is contemplated in *Nolo Press/Folk* and *Olson*. Nor does it permit us to ignore the fact that the two operate in different realms of authority, one generally ministerial and one discretionary and advisory. And, nothing of record suggests or establishes that Davis somehow authorized Kelli to pass from one realm to the other at anytime. Thus, we cannot accept the proposition that, as a matter of law, Kelli had the general authority to practice law by *sua sponte* drafting the Moser wills and determining what provisions to include therein, all without the knowledge of Davis.

### *Issue Two*

Via issue two, Moser contends that the trial court erred in submitting issue number two to the jury. Issue two read: "On the occasion of the events in question was Kelli Walden acting in the scope of her employment?" Furthermore, the entirety of appellant's argument consists of the following:

> In the Charge to the jury, the court instructed the jury that the court had found that Kell[i] Walden, as an employee of Donald L. Davis, P.C., negligently misrepresented the contents of the Will of August 19, 1997 to the plaintiff. That is a finding as a matter of law that has already beenestablished by the trial court pursuant to the Charge of the court. The submission of Issue Two contradicts the court's findings, and should be ignored.[2]

---

[2]The supposed finding of the court to which Moser refers is located immediately before issue one of the jury charge. It reads: "The Court finds that Kelli Walden, as an employee of Don Davis, P.C., negligently misrepresented the contents of the Will of August 19, 1997 to Plaintiff." What the trial court actually meant by the phrase "as an employee of Don Davis, P.C." is not disclosed in the charge or elsewhere. And, because we do not know, we cannot simply infer that it intended to find or found that Kelli acted within the scope of her employment when she made the misrepresentations.

7

As can be seen, no authority is cited in support of the argument. Nor does Moser provide us with substantive analysis. Both were required under Texas Rule of Appellate Procedure 38.1(h). *See Vasquez v. State,* 22 S.W.3d 28, 31 (Tex. App. – Amarillo 2000, no pet.) (discussing the rule as applied to a constitutional issue). And, because neither was provided, Moser waived her second issue. *In re Williams,* 998 S.W.2d 724, 730 (Tex. App. -- Amarillo, no pet.) (holding that the failure to cite authority or provide substantive analysis results in waiver of the argument).

Second, to preserve complaint regarding the submission of a jury issue, the complaining party must timely object at trial. *In re Moore*, 890 S.W.2d 821, 830-31 (Tex. App.–Amarillo 1994, no writ). Furthermore, the grounds of the objection must be specific. *Id.* Finally, the grounds asserted on appeal must comport with those mentioned at trial. *Galveston County Fair & Rodeo, Inc. v. Kauffman*, 910 S.W.2d 129, 135 (Tex. App.–El Paso 1995, writ denied) (holding that the complaint was not preserved because the grounds asserted on appeal differed from those mentioned at trial). While Moser objected to submission of issue two at trial, the sole ground mentioned did not involve the trial court's purported finding as a matter of law (under issue one) that Walden was acting within the course and scope of her employment. Thus, the grounds urged here differ from those mentioned below, resulting in the waiver of the issue now before us.

Yet, assuming *arguendo* that waiver had not occurred, we would refer the litigants to our discussion under issue one. There, we found no evidence supporting the proposition that Kelli acted within her general authority when preparing and executing the will. Having exceeded her authority in that regard, it hardly follows that, as a matter of law, she was

8

within her authority when she advised the Mosers about the wills and the legal effect of their provisions. That too would constitute the practice of law, something Moser failed to prove Kelli was entitled to do as a secretary. Given this, the trial court could not have legitimately held (via issue one) that the issue of whether she was so acting was established adversely to Davis, as a matter of law.

### Issues Three and Five

In issues three and five, Moser contends that various of the findings by the jury were against the great weight and preponderance of the evidence and, therefore, manifestly unjust. Those findings relate to Kelli's operation within the course and scope of her employment and Davis' negligence. However, neither issue was included in a motion for new trial as required by Texas Rule of Civil Procedure 324(b)(3). Nor were they expressly mentioned in Moser's motion for judgment notwithstanding verdict.[3] Consequently, both arguments were waived. *Kratz v. Exxon Corp.*, 890 S.W.2d 899, 902 (Tex. App.–El Paso 1994, no writ) (holding that the appellant waived his contention regarding the factual sufficiency of the evidence because it was not included in a motion for new trial).

### Issue Four

In her fourth issue, Moser contends that to the extent issue two was submitted, the court was obligated to restrict the time referenced therein to August 19, 1997.[4] The latter

---

[3]Even had they been, that would not have satisfied the requirements of Rule 324(b)(3). *Kratz v. Exxon Corp.*, 890 S.W.2d 899, 902 (Tex. App.–El Paso 1994, no writ).

[4]The requested issue read: " Was Kelli Walden acting in the scope of her employment with Don Davis, P.C. on August 19, 1997 in preparing and executing Malcomb Moser's will?" The issue actually submitted read: "On the occasion of the events in question was Kelli Walden acting in the scope of her employment?"

9

is the date on which Kelli drafted the wills on behalf of Moser.  Furthermore, the issue was to be so restricted, according to Moser, because it was undisputed that the secretary committed negligence in placing the will in the firm's safety-deposit box and omitting to tell Davis about her doing so.  We overrule the point for several reasons.

First, Texas Rule of Appellate Procedure 38.1(h) requires that the appellant provide the reviewing court substantive (as opposed to conclusory) analysis of the argument as well as authority supporting it. *In Re Williams,* 998 S.W. 2d at 830-31.  The analysis provided us consisted of little more than the statement that "it is undisputed that [Kelli] was in the scope of her employment in maintaining the Will in the office safety-deposit box " and in "failing to advise Davis that the new Will had been done . . . ."  Furthermore, no rule, opinion, statute or other legal authority accompanied the brief argument.  Accordingly, Moser did not comply with Rule 38.1(h) and preserve the argument for review.  *Pankow v. Colonial Life Ins. Co. of Texas,* 932 S.W.2d 271, 274 (Tex. App. - - Amarillo 1996, writ denied).

Second, in explaining to the trial court why she believed that she was entitled to an instruction mentioning August 19th, Moser argued that the 19th was the date on which Kelli "was" within the scope of her employment.  On appeal, however, she asserts that if there were any date on which one could question whether Kelli acted within the scope of her employment it was the 19th of August.  In other words, the argument proffered here is the opposite of that urged below.  And, because the grounds underlying the objection at bar do not comport with those mentioned below, Moser again failed to preserve error.  *Galveston County Fair & Rodeo, Inc. v. Kauffman*, 910 S.W.2d at 135.

10

Finally, Moser is asking us to conclude that in performing a task outside the scope of her employment (*i.e.* drafting and executing the will), placing the document in the office lockbox, and then neglecting to tell Davis that she did either, Kelli somehow acted within the scope of her employment as a matter of law. Simply put, the sum does not logically arise from its components of the equation. In other words, we do not see how one can be said to be acting within the scope of authority, as a matter of law, when she does something outside that scope and secrets that and its product from her employer.

Davis did not testify that her failure to disclose the act fell within the scope of her employment. He merely likened it to negligence. Nor did Moser cite us to either authority or evidence indicating that one who commits an act outside the scope of authority and fails to reveal same to the employer somehow makes the act one within the scope of employment. And, that Kelli may have used the office lockbox to facilitate her deception (without the knowledge or consent of Davis) matters not for the act upon which all depends (the creation of the wills) was still outside the scope of employment. So, we cannot say that Moser was entitled to the proffered jury issue because she indisputably proved that Kelli acted within the scope of her employment when she placed the will in the lock box and failed to disclose that to Davis.

Accordingly, we affirm the judgment of the trial court.


Brian Quinn
Justice


11

Publish