In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00117-CV


______________________________




BOBBY C. THOMAS, Appellant



VS.



CRYSTAL D. WHEELER, INDIVIDUALLY AND AS NEXT FRIEND FOR 


JALEAN M. WHEELER AND JAYLA M. WHEELER, Appellees







 


On Appeal from the 321st Judicial District Court


 Smith County, Texas


Trial Court No. 06-1212-D




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss


Dissenting Opinion by Justice Carter


MEMORANDUM OPINION


 Bobby C. Thomas (1) believes strongly--and wishes to present evidence--that Jalean M.
Wheeler and Jayla M. Wheeler, two minor children, are not biologically his. But, by default
judgment dated August 19, 2004, Thomas was adjudged to be their father and was ordered to pay
child support for them. That default judgment is supported, if at all, by substituted service under
Rule 106 of the Texas Rules of Civil Procedure--substituted service that Thomas claims was
invalid.

 When Thomas attacked the judgment by a bill of review filed May 11, 2006, he claimed (2) in
his petition both that the substituted service was invalid because it was not calculated to give him
notice of the proceeding and that he did not receive actual notice of the proceeding. Then he
appeared at a trial setting to present his bill of review to the trial court. At that hearing, in an
extended discussion among the trial court and the attorneys for the State and for Thomas, the court
spent some time getting oriented on the subject matter and issues involved in that hearing. After the
trial court noted that service on Thomas was by substituted service, it read aloud much of the
affidavit filed in support of the substituted service. In response to the reading of allegations from
that affidavit, Thomas' attorney initiated an exchange from which the trial court obviously concluded
that Thomas claimed only lack of actual notice:

 [THOMAS' COUNSEL]: I'm not challenging the fact that the -- that the Rule
106 may have been an [sic] order. What I'm
challenging is --

 

 THE COURT: Okay.

 

 [THOMAS' COUNSEL]: -- the fact that he served someone who never gave the
citation to my client, and I've got proof of that. I've
got both of -- my client and the party who was served
ready to testify. I'd like to put on my case.

 

 THE COURT: Well, hang on just one second. I've got to figure out
what it is we're doing before we can go any further. 
Okay. Let's look at Rule 10 -- this is Rule 109?

 

 [STATE'S COUNSEL]: It's 106, Your Honor.

 

 THE COURT: Rule 106. I want to make sure I understand what's
going on, so just hang on.

 

 (Brief pause)

 

 THE COURT: Okay. So just so I understand, [Thomas' counsel],
you're saying that the fact -- that he did not get actual
notice --

 

 [THOMAS' COUNSEL]: That's correct --

 

 THE COURT: -- and you're complaining?

 

 [THOMAS' COUNSEL]: -- Your Honor.


 The trial court then read from a Texas Supreme Court opinion ruling that actual notice is not
required to sustain the validity of substituted service. See State Farm Fire & Cas. Co. v. Costley,
868 S.W.2d 298, 299 (Tex. 1993). The discussion continued:

 THE COURT: . . . Do you have some case law that says you have to
have actual notice under -- under substituted service?

 

 [THOMAS' COUNSEL]: Well, yes, ma'am. I can --

 

 THE COURT: Okay. If I can look at -- this is a Supreme Court case,
1993.

 

 (Brief pause)

 

 [THOMAS' COUNSEL]: I don't know that I have a case that says that, but I
believe I'm entitled to put on my proof, Your Honor.

 

 THE COURT: Hang on. Let me look at the law.


 Then the trial court read aloud more extensively from the Costley opinion. The recitation
included in those excerpts the Texas Supreme Court's general discussion about the purposes and
requirements for substituted service under Rule 106, the fact that such substituted service is intended
for situations in which giving actual notice is impractical, and the fact that substituted service must
be supported by proof that the method of substituted service is reasonably calculated to give notice
to the party being served. The trial court continued the discussion:

 THE COURT: So the -- see, it says you don't -- you don't have to
show actual notice.

 

 [THOMAS' COUNSEL]: I understand what you're saying --

 

 THE COURT: Okay.

 

 [THOMAS' COUNSEL]: -- Judge.

 

 THE COURT: Okay.

 

 [THOMAS' COUNSEL]: But I still want to put on my proof.

 

 THE COURT: Well, you don't -- actual notice -- if that's your only
ground, actual notice, I don't need any evidence,
because that's not a -- that's not what the law says I
have to show. The -- the test is -- 

 

 [THOMAS' COUNSEL]: All right. Then I want to put on my proof for a Bill of
Exceptions then.

 

 THE COURT: Okay. Well, we'll do that at the end of the docket.


 During the presentation of Thomas' bill of exceptions, he first got the trial court to take
judicial notice of the complete file in cause number 04-1277-D--the underlying case in which the
substituted service was requested, ordered, and accomplished and the default judgment against
Thomas was rendered--and then put on two witnesses. Thomas testified that, at the time of the
substituted service, he was not residing at the address at which the service was accomplished, that
he had visited there before, and that he had resided there "way prior to that." He also testified that
he never had notice of the underlying lawsuit and that there was reason to believe the children were
not fathered by him. Randal Keith McIntyre testified that he received the substituted service papers
but never gave them to Thomas--in fact, McIntyre testified that he did not even know Thomas at
the time.

 On appeal, Thomas asserts the trial court erred in three ways: (1) in denying his bill of
review because the substituted service is defective and cannot support the default judgment, (2) in
refusing to hear evidence at the hearing on Thomas' bill of review, and (3) in refusing to grant him
a new trial on newly discovered DNA evidence that he was not the father of the two children.

 We affirm the judgment of the trial court because (1) Thomas waived his complaint about
the substituted service, (2) the trial court did not err in refusing to hear evidence, and (3) allegedly
newly discovered evidence not attacking the basis for judgment is not a ground for new trial.

(1) Thomas Waived His Complaint About the Substituted Service

 There is no question that the above-quoted exchanges between Thomas' attorney and the trial
court were not a model of clarity, but we find ourselves directed inexorably to the unavoidable, and
unfortunate, conclusion that Thomas waived his issue about the validity of the substituted service.

 Analysis must begin with the fact that Thomas' petition for bill of review included twin
attacks on the underlying judgment: both that the substituted service was invalid because it was not
calculated to give him notice of the proceeding and that he did not receive actual notice of the
proceeding. Then the question becomes whether, by his counsel's actions at the hearing, Thomas
waived his attack on the substituted service or failed to preserve that issue for appellate review.

 Here, the record demonstrates only one result: that Thomas' counsel intended to waive the
defective-substituted-service claim set out in his bill of review and argue only the lack of actual
notice. While we are sympathetic with Thomas' plight--not to have his day in court to try to
establish that he did not father these two children--the question before us is whether Thomas waived
any valid attack on the substituted service supporting that judgment. Based on the record before us,
we must conclude that, at the hearing on his bill of review Thomas' counsel orally waived the
argument that the substituted service was invalid, leaving only the argument that Thomas did not
receive actual notice of the underlying suit. Because, standing alone, the lack of actual notice is a
losing argument, the trial court's denial of Thomas' bill of review was unfortunate but proper. Our
reasoning follows.

 Thomas' bill of review makes out a single cause of action, a suit to set aside the default
judgment that declares his paternity and orders him to pay child support. In pursuit of that single
cause of action, his petition set out two arguments: (1) the substituted service was not calculated to
give him notice and was therefore invalid, and (2) he did not get actual notice of the suit.

 Short of an amendment to pleadings, or failure to get a jury issue on a cause of action in a
jury trial, abandonment of a cause of action at trial requires formal abandonment of the cause of
action on the record and a recitation of that abandonment in the court's judgment. See Henson v.
Grayford Oil Corp., 549 S.W.2d 7, 12 (Tex. Civ. App.--Dallas 1977, writ ref'd n.r.e.) (op. on reh'g);
First Nat'l Bank v. McClellan, 117 S.W.2d 807, 808 (Tex. Civ. App.--Amarillo 1938, no writ). 
Here, though, the question is not whether Thomas waived or abandoned a cause of action; but only
whether he waived an argument.

 An argument can be waived more easily than a cause of action can be abandoned. A party
can waive an argument by failing to raise it to the trial court or by expressly waiving it, orally, to the
court. When a party tells a court that the party does not make argument X, but instead is arguing Y,
that utterance waives argument X. See Cont'l Cas. Ins. Co. v. Functional Restoration Assocs., 19
S.W.3d 393, 402 (Tex. 2000). That is precisely what Thomas did. Thomas' attorney told the trial
court, "I'm not challenging the fact that the . . . Rule 106 may have been an [sic] order. What I'm
challenging is . . . the fact that he served someone who never gave the citation to my client, and I've
got proof of that." Though the court reporter transcribed that statement in the way it is quoted above,
it is clear to us, and appeared to be clear to the trial court and to counsel for both parties, that Thomas
was not pursuing his pled argument that the substituted service was inadequate, but only his
argument that he did not receive actual notice.

 Waiver is "an intentional relinquishment of a known right or intentional conduct inconsistent
with claiming that right." Jernigan v. Langley, 111 S.W.3d 153, 157 (Tex. 2003). For waiver to be
implied based on a party's actions, intent to waive must be clearly demonstrated in the surrounding
facts and circumstances. Motor Vehicle Bd. of Tex. Dep't of Transp. v. El Paso Indep. Auto. Dealers
Ass'n, 1 S.W.3d 108, 111 (Tex. 1999). If the person to be charged with waiver of a right says or does
nothing inconsistent with an intent to rely upon that right, the right has not been waived. Maryland
Cas. Co. v. Palestine Fashions, Inc., 402 S.W.2d 883, 888 (Tex. 1966).

 Thomas' argument that the Rule 106 service was defective was waived by the express
utterance of his counsel. The above quoted statement of counsel, the subsequent dialogue on the
record, and the trial court's responses are all consistent with such a waiver. It was certainly
understood by the trial court to be a waiver of the defective-substituted-service argument, leaving
only the (ineffective) lack-of-actual-notice argument. (3) We have studiously attempted to understand
counsel's utterance to mean anything other than exactly that waiver, but no other meaning has
surfaced.

 While no presumptions are made in support of a judgment being directly attacked, see Flynt
v. City of Kingsville, 125 Tex. 510, 82 S.W.2d 934 (1935), the policy of the law favors the finality
of judgments. Montgomery v. Kennedy, 669 S.W.2d 309, 312 (Tex. 1984). Therefore, bills of
review are scrutinized "with extreme jealousy and the grounds on which interference [with final
judgments] will be allowed are narrow and restricted." Brooks v. Assocs. Fin. Servs. Corp., 892
S.W.2d 91, 92 (Tex. App.--Houston [14th Dist.] 1994, no writ). Affirming the trial court's denial
of Thomas' bill of review would be consistent with that policy.

 However distasteful the outcome which denies Thomas the chance to try to prove the truth
of his convictions that he did not father the children in question, his counsel's dialogue with the trial
court at the hearing on his bill of review foreclosed that possibility by waiving the only potentially
valid argument Thomas had.

 The same outcome is dictated by viewing this issue from a different angle. On appeal,
Thomas presents a different issue than that presented to the trial court at the hearing on his bill of
review. To the trial court, he expressly limited his argument to the lack of actual notice; now on
appeal he attacks the substituted service. He reasons that the default was improperly taken because
the affidavit supporting substituted service was based on conclusions and statements made two
months before the substituted service occurred, and because the substituted service was effected at
a place which was not his residence, place of business, or where he could probably be found. 

 Although Thomas correctly sets out the procedural posture of this case, his argument
assailing the substituted service was never presented to the trial court. And that is fatal. Complaints
and  arguments  on  appeal  must  correspond  with  the  complaint  made  at  the  trial  court  level. 
Century 21 Real Estate Corp. v. Hometown Real Estate Co., 890 S.W.2d 118, 124 (Tex.
App.--Texarkana 1994, writ denied). Since the grounds asserted on appeal do not comport with
those asserted at trial, the issue is not preserved for appeal. See McKee v. McNeir, 151 S.W.3d 268,
270 (Tex. App.--Amarillo 2004, no pet.); Moser v. Davis, 79 S.W.3d 162, 169 (Tex.
App.--Amarillo 2002, no pet.). (4) We overrule this point of error.

(2) The Trial Court Did Not Err in Refusing to Hear Evidence

 Thomas also complains on appeal that the trial court erred in not hearing his evidence that
Thomas did not receive actual notice of the proceedings. The record reflects that substituted service
was accomplished on Thomas under Rule 106 of the Texas Rules of Civil Procedure by leaving a
copy with an adult at an address specified in the order for substituted service. Substituted service
is predicated on having a procedure that, though it may or may not actually give notice, is expected
to be "reasonably effective to give the defendant notice of the suit." See Tex. R. Civ. P. 106(b)(2).

 Substituted service exists to allow plaintiffs to effect service where proof of
actual notice under Rule 106(a) is impractical. See Wilson v. Dunn, 800 S.W.2d 833,
836 (Tex. 1992). Under Rule 106(b) a court may authorize substituted service only
after a plaintiff has unsuccessfully tried to effect personal service or service by
certified mail, return receipt requested, as required by Rule 106(a). Tex. R. Civ. P.
106(b). A plaintiff may resort to substituted service only upon the failure of these
methods which provide proof of actual notice. Thus, to require proof of actual notice
upon substituted service would frustrate Rule 106(b)'s purpose of providing alternate
methods for plaintiffs . . . .

Costley, 868 S.W.2d at 298-99. Since actual notice is not required for the substituted service to be
effective, actual notice was not relevant to Thomas' bill of review and does not affect any substantial
right of a party. See Tex. R. Evid. 103(a). We find no error in the trial court's refusal.

(3) Allegedly Newly Discovered Evidence Not Attacking the Basis for Judgment Is Not a Ground
for New Trial


 After the trial court denied Thomas' bill of review, he filed a motion for new trial claiming
newly discovered evidence in the form of a DNA test stating that the children were not his. Our
review of the record leads us to conclude his motion was overruled by operation of law without a
hearing. But, regardless of that procedural artifact, and even if the DNA evidence could be
considered newly discovered, the DNA evidence does not undermine the basis on which the bill of
review was denied. The bill of review was denied because Thomas' only challenge to the underlying
service of process on him was based on his alleged lack of actual notice, which we have noted above
is not a valid defense when substituted service is used to serve process. No error is shown.

 We affirm the judgment of the trial court.


 

 Josh R. Morriss, III

 Chief Justice




DISSENTING OPINION



 Bobby C. Thomas was found to be the father of two children by default. The trial court
authorized substituted service based on a process server's affidavit that Thomas lived at 20317
Eastern Hills Road, Flint, Texas. The papers were served at that address on someone who did not
know Thomas. Thomas says that was not his home, he never got the papers, and DNA tests prove
the children are not his. He hired a lawyer who filed a bill of review asserting that the service was
defective because Thomas never had notice of the proceeding and the substituted service on a person
unknown to him at a place that was not his residence or place of business was not reasonably
calculated to give him notice. A hearing was set; Thomas, his lawyer, and the person who was
served appeared to present their evidence. After a brief discussion with the trial court, Thomas'
motion was overruled and the trial court refused to hear any evidence. Now this Court, based on
ambiguous statements before the trial judge, declares that "Thomas' counsel intended to waive the
defective-substituted-service claim set out in his bill of review." I disagree. 

 This Court finds this waiver because Thomas' lawyer stated he was not challenging the fact
that the Rule 106 "may have been an order." He further stated that he was asserting that the person
served never gave the citation to Thomas. The majority opinion implies that the court reporter
improperly transcribed the record and finds the record to provide "clear" evidence that counsel was
not pursuing his pled argument that substituted service was inadequate, but only his argument that
he did not receive actual notice. (5) 

 First, I think we must use the record that the court reporter certifies is true and correct. If
either party believes the court reporter's record is incorrect, the party may ask the trial court to settle
the issue and resolve any dispute. Tex. R. App. P. 34.6(e)(2). Neither party urged a correction of
the record. The literal language contained in the certified court reporter's record simply does not
contain statements by Thomas' attorney relinquishing his attack on the propriety of the Rule 106
service. But the majority opinion finds it is "clear" that he was not pursuing his pled argument that
the substituted service was inadequate. 

 To support this rationale, the majority cites one administrative law case where the appellant
waived an argument by failing to raise it below at all in addition to specifically waiving the argument
to the trial court. Cont'l Cas. Ins. Co. v. Functional Restoration Assocs., 19 S.W.3d 393, 402 (Tex.
2000). The language in Continental compared to this expression is distinguishable. ("We don't
argue that APTRA (now APA) provides an independent source of judicial review . . . ." vs. "I'm not
challenging the fact that the . . . Rule 106 may have been an order.") Thomas gave up nothing by
stating he did not challenge the fact that the Rule 106 was an order. His evidence challenging actual
notice of the suit does not provide an affirmative waiver of his pleading that service by the 106 order
was not reasonably effective to give him notice. 

 Throughout the discussion with the court, Thomas' counsel repeatedly stated that he had
evidence to present and requested to be allowed to present the evidence. "I'd like to put on my case." 
"I'm entitled to put on my proof, your Honor." "I still want to put on my proof." "All right. Then I
want to put on my proof for a Bill of Exceptions then." 

 In district court, parties are required to file pleadings to notify the opposing party of the
issues. Unlike a justice of the peace court, where pleadings may be presented orally, in district court,
both the parties and the judge have notice, before any hearing, of the matters raised. If an opposing
party feels the pleadings are inadequate, it may file special exceptions to the pleadings. Once this
hearing began, the issues were already before the court. The law does not require the attorneys to
explain to the trial court the issues being raised or risk those issues being relinquished. When a party
appears in court and has proper pleadings and requests to present evidence relevant to those
pleadings, he or she should not be considered to have relinquished them unless he or she expresses
an unequivocal statement of relinquishment. 

 When the evidence finally was allowed to be presented for a bill of exceptions, it was directly
relevant to both issues raised in the pleadings: lack of actual notice and service was not reasonably
effective to give notice to Thomas. To obtain a Rule 106 order for substituted service, Jeff Holcomb,
a process server, swore that he had attempted unsuccessfully to serve Thomas at 20317 Eastern Hills
Road, Flint, Texas. He further swore that service on anyone over sixteen years of age would be
reasonably effective notice to Thomas because it was "the party's usual place of abode or business." 
The trial court, acting on the sworn affidavit, authorized service on anyone over sixteen years of age
at the address, impliedly finding that such a procedure would be reasonably effective notice of the
suit. Thomas' testimony directly contradicted the affidavit as he testified that the stated address was
not his residence; at that time, his residence was at Town Park in Tyler. Further, the person on
whom service was made, Keith McIntyre, testified he did not know Thomas or notify him of the suit
papers. All of this evidence is affirmative proof on the issue of whether service was reasonably
effective to give notice, but it was never considered by the trial court. 

 Furthermore, the fact Thomas also claimed that he did not receive actual notice of the original
filing is not irrelevant. One of the factors that a plaintiff generally has to prove in a bill of review
is that he or she was not negligent. Transworld Fin. Servs. Corp. v. Briscoe, 722 S.W.2d 407, 408
(Tex. 1987). Proving that he never received actual notice of the suit would be relevant evidence on
that issue. 

 Experience suggests that hearings such as this in a family court are set along with numerous
other matters. Time is of the essence. The court may ask the attorneys to state briefly their claims;
unless the party intentionally relinquishes a pleading or argument, these summary statements to the
trial court should not deprive a party of his or her right to have his or her properly pled argument and
evidence considered. Thomas had specifically pled the issue of the propriety of the notice given, he
appeared in court to present this evidence, and it was never considered. To deny him the right to
have his evidence considered by the court, there should be undeniable evidence that he intentionally
relinquished that right. That is not found in this record. The trial court erred in overruling Thomas'
bill of review without hearing the relevant evidence on the issues as outlined in the pleadings. 
Unlike the trial court, this Court had ample time to carefully review the matter to arrive at a proper
conclusion; instead, we have compounded the error. I would remand this for a retrial to allow the
trial court to hear all of the evidence relevant to the pleadings. I respectfully dissent. 

 

 Jack Carter

 Justice


Date Submitted: April 3, 2008

Date Decided: July 29, 2008
1. This case arose from Smith County but has been transferred to this Court as part of the
Texas Supreme Court's docket equalization program.
2. He also alleged he had a meritorious defense: the children were not his.
3. In making its implicit decision that counsel had waived the substituted service argument,
the trial court had the benefit of not only the bare spoken words (transcribed into the cold record
before us), but also other communication clues from counsel not transcribed in the record, such as
any vocal inflections, expressions, or gestures--things that regularly are used in interpreting face-to-face communications. We believe that fact should endue the trial court's decision with some
measure of deference.
4. To qualify for a remedy by bill of review, a litigant "must allege and prove, within the time
allowed, (1) a meritorious defense . . ., (2) which he was prevented from making by fraud, accident
or wrongful act of the opposite party, (3) unmixed with any fault or negligence on his own part." 
Hanks v. Rosser, 378 S.W.2d 31, 34 (Tex. 1964).
5. The opinion quotes Thomas' attorney, "I'm not challenging the fact that the . . . that the Rule
106 may have been an order." But the majority opinion inserts the [sic] signal after the word "an,"
suggesting that it is inaccurate. Further, the opinion implies the record is in error by stating "though
the court reporter transcribed that statement in the way it is quoted above."