In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-12-00486-CV

_____

IN RE COMMITMENT OF WILLIAM PAUL WEISSINGER

On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No. 12-01-00208 CV

**MEMORANDUM OPINION**

The State of Texas filed a petition to commit appellant William Paul Weissinger as a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2012). A jury found that Weissinger is a sexually violent predator, and the trial court signed a final judgment and order of civil commitment. Weissinger raises seven appellate issues for our consideration. We affirm the trial court's judgment and order of civil commitment.

ISSUE ONE

In his first issue, Weissinger argues the evidence is legally insufficient to support a finding that he will likely commit a predatory act for the primary purpose

of victimization. When reviewing the legal sufficiency of the evidence, we review all of the evidence in the light most favorable to the verdict to determine whether a rational jury could have found, beyond a reasonable doubt, that Weissinger is a sexually violent offender. *See In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex. App.—Beaumont 2002, pet. denied). It is the fact finder's responsibility to fairly resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.* at 887.

Pursuant to the SVP statute, the State must prove beyond a reasonable doubt that "the person is a sexually violent predator." Tex. Health & Safety Code Ann. § 841.062(a) (West 2010). The SVP statute defines "sexually violent predator" as a person who "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id.* § 841.003(a) (West 2010). The statute defines "behavioral abnormality" as "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2) (West Supp. 2012). The inability to control behavior "must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil

2

commitment from the dangerous but typical recidivist convicted in an ordinary criminal case." *Kansas v. Crane*, 534 U.S. 407, 413, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002).

The record contains legally sufficient evidence from which the jury could determine that Weissinger is a sexually violent predator and is likely to commit predatory acts of sexual violence against individuals for the primary purpose of victimization. Board-certified forensic psychiatrist Dr. Michael Arambula testified that based on interviews with Weissinger, Weissinger's records and history, and his diagnosed conditions, Weissinger has a behavioral abnormality that makes him likely to commit predatory acts of sexual violence. The jury heard evidence concerning Weissinger's risk factors, including his criminal history, repeated sexual offenses, the ongoing nature of his abuse of some of his victims, minimal acceptance of responsibility for his offenses, lack of remorse or empathy with his victims, reoffending despite sex offender treatment, a disciplinary case during his incarceration, his diagnosis of sexual deviance in the form of both pedophilia and paraphilia not otherwise specified with sadistic features, and his tendency to behave in an antisocial manner by committing offenses that exploit or take advantage of other individuals. The jury also heard Arambula testify on cross-

3

examination, when Weissinger's defense counsel asked Arambula if he considered whether Weissinger's primary purpose was victimization, as follows:

> [W]hen someone like Mr. Weissinger commits a sexual offense or a sexual assault, . . . embedded in that act is a victim that can't be separated. So when an individual does that, they're cognizant that it's illegal, that the victim is being victimized, and that's what I look at. It just so happens that sexual enjoyment is coupled with that, but embedded in any sexual offense is a victim.

The jury could reasonably conclude that Weissinger is likely to engage in a predatory act of sexual violence. *See Mullens*, 92 S.W.3d at 887; *see also In re Commitment of Almaguer*, 117 S.W.3d 500, 506 (Tex. App.—Beaumont 2003, pet. denied); *In re Commitment of Burnett*, No. 09-09-00009-CV, 2009 Tex. App. LEXIS 9930, at *13 (Tex. App.—Beaumont Dec. 31, 2009, no pet.) (mem. op.). The jury could reasonably conclude that Weissinger has serious difficulty controlling his behavior and is likely to commit predatory acts of sexual violence directed toward individuals for the primary purpose of victimization. *See Mullens*, 92 S.W.3d at 887; *see also Almaguer*, 117 S.W.3d at 506; *Burnett*, 2009 Tex. App. LEXIS 9930, at *13. Such conclusions are implicit in the jury's finding that Weissinger is a sexually violent predator, which the charge defined as a repeat sexually violent offender who suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See In re Commitment of Grinstead*, No. 09-07-00412-CV, 2009 Tex. App. LEXIS 228, at *16 (Tex. App.—

4

Beaumont Jan. 15, 2009, no pet.) (mem. op.) (citing *Almaguer*, 117 S.W.3d at 505); *see also In re Commitment of Bailey*, No. 09-09-00353-CV, 2010 Tex. App. LEXIS 6685, at \*\*12-14 (Tex. App.—Beaumont Aug. 19, 2010, no pet.) (mem. op.). Reviewing all of the evidence in the light most favorable to the verdict, a rational jury could have found, beyond a reasonable doubt, that Weissinger is a sexually violent predator who is likely to commit predatory acts of sexual violence directed toward individuals for the primary purpose of victimization; therefore, the evidence is legally sufficient. *See Crane*, 534 U.S. at 413; *Mullens*, 92 S.W.3d at 885. We overrule issue one.

ISSUE TWO

In his second issue, Weissinger asserts that the trial court erred by compelling him to respond to the State's requests for admissions "which encompassed an ultimate fact issue[.]" Specifically, Weissinger complains of request for admission number twenty-three, in which the State asked Weissinger to admit "Even though I knew it was wrong to sexually offend, I did it anyway." Weissinger filed a motion for protective order, in which he asked the court "to protect him from Petitioner's Requests for Admissions." In the motion, Weissinger objected "to each request for admission[] numbered 1 thru 69 on the ground that the requested admissions address either an ultimate issue or an ultimate

5

circumstance or fact[,]" and that the requests were "sought to deny [Weissinger] his right to a jury trial and to prevent [Weissinger] from providing a defense in this pending litigation." Weissinger also contended that permitting the State to use requests for admissions against him would deprive him of his right to require the State to prove its case beyond a reasonable doubt. Weissinger did not complain specifically about request number twenty-three, but raised the same objections with respect to each of the sixty-nine requests for admissions propounded by the State. After the trial court denied his motion for protective order, Weissinger responded, "Admit" to request number twenty-three.

Weissinger complains, for the first time on appeal, that request for admission number twenty-three coerced him into admitting that he has serious difficulty controlling his behavior, which is an element that the State must prove to civilly commit him as a sexually violent predator. *See* Tex. Health & Safety Code Ann. § 841.002(2); *Crane*, 534 U.S. at 413. An issue on appeal must comport with an objection made at trial; otherwise, the appellate complaint is waived. *See Moser v. Davis*, 79 S.W.3d 162, 169 (Tex. App.—Amarillo 2002, no pet.); *see also* Tex. R. App. P. 33.1(a). However, even if Weissinger had properly preserved the issue, an affirmative answer to request for admission number twenty-three demonstrates

only that he knew that his behavior was wrong, but engaged in it nevertheless. We overrule issue two.

ISSUE THREE

In his third issue, Weissinger challenges the trial court's decision to grant the State's motion for protective order regarding the requests for admissions he propounded to the State. Weissinger propounded fifty-six requests for admissions to the State, and the State filed a motion for protective order, in which the State argued that the requests sought irrelevant information, were not reasonably calculated to lead to the discovery of admissible evidence, and should instead be directed to the State's experts or other witnesses. The trial court granted the State's motion for protective order and ordered that the State was only required to answer requests for admissions twenty-eight and fifty.[1]

A party generally may obtain discovery regarding any non-privileged matter that is relevant to the subject matter of the case. Tex. R. Civ. P. 192.3(a). Requests for admissions are intended to simplify trials, and are useful in addressing uncontroverted matters. *Marino v. King*, 355 S.W.3d 629, 632 (Tex. 2011). We will reverse the trial court's discovery ruling if Weissinger shows that the trial

[1]Request for admission number twenty-eight asked the State to admit that Weissinger is an inmate of TDCJ, and request number fifty asked the State to admit Weissinger's date of birth.

court abused its discretion and the trial court's error probably caused the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a); *Hallum v. Hallum*, No. 01-09-00095-CV, 2010 Tex. App. LEXIS 9541, at \*23 (Tex. App.—Houston [1st Dist.] Dec. 2, 2010, no pet.) (mem. op.).

Assuming without deciding that the trial court abused its discretion by granting the State's motion for protective order, we conclude that any error was harmless. The record indicates that Weissinger's counsel deposed Arambula and Weissinger's expert witness, and the trial court's docket control order required the State to produce the Multi-Disciplinary Team referral packet. *See In re Commitment of Perez*, No. 09-12-00132-CV, 2013 WL 772842, at \*6 (Tex. App.—Beaumont Feb. 28, 2013, pet. denied) (mem. op.); *see also In re Commitment of Sprague*, No. 09-10-00228-CV, 2011 Tex. App. LEXIS 4503, at \*\*13-14 (Tex. App.—Beaumont June 16, 2011, no pet.) (mem. op.). Because the record demonstrates that Weissinger had access to other sources to obtain the information he sought in his requests for admissions, any error by the trial court in granting the State's motion for protective order did not cause the rendition of an improper judgment or prevent Weissinger from presenting his case on appeal. *See* Tex. R. App. P. 44.1(a); *Perez*, 2013 WL 772842, at \*6.

In his reply brief, Weissinger argues that this Court incorrectly decided *Perez* because this Court did not apply the rule of *Ford Motor Co. v. Castillo*, 279 S.W.3d 656 (Tex. 2009). Weissinger asserts that "*Castillo* stands for the proposition that a denial of discovery is *per se* reversible error if the suppressed information does not appear in the appellate record thereby preventing a party from adequately prosecuting an appeal on that basis." In *Castillo*, the plaintiffs filed a products liability lawsuit for personal injuries sustained in an automobile accident, and the parties settled the case while the jury was deliberating. *Castillo*, 279 S.W.3d at 659. The settlement took place after the presiding juror sent a note to the trial judge that asked the maximum amount that could be awarded, and based upon later discussions with the jury, the defendant suspected that an outside influence might have been brought to bear on the presiding juror. *Id.* The trial court refused to allow the defendant to conduct any discovery regarding the outside influence issue, and the defendant withdrew its consent to the settlement agreement. *Id.* at 659-61. The plaintiffs moved for summary judgment, alleging breach of the settlement, and the trial court granted summary judgment in favor of the plaintiffs. *Id.* at 660-61. Unlike the situation faced by the *Castillo* court, the proposed discovery (in this case, requests for admissions) appear in the record, and the record reveals that Weissinger was allowed to conduct discovery by other

means. *See id.* at 659-61, 667. For all the reasons discussed above, we overrule issue three.

## ISSUE FOUR

In issue four, Weissinger challenges the trial court's refusal to permit his counsel to question the venire during voir dire regarding the concept of "serious difficulty in controlling behavior." We review the trial court's refusal to permit lines of questioning during voir dire under an abuse of discretion standard. *In re Commitment of Hill*, 334 S.W.3d 226, 229 (Tex. 2011). "'[A] court abuses its discretion when its denial of the right to ask a proper question prevents determination of whether grounds exist to challenge for cause or denies intelligent use of peremptory challenges.'" *Id.* (quoting *Babcock v. Nw. Mem'l Hosp.*, 767 S.W.2d 705, 709 (Tex. 1989)).

To preserve error, a party must make a timely request that makes clear by words or context the grounds for the request and by obtaining an express or implicit ruling on the request. *Id.* (citing Tex. R. App. P. 33.1). For an appellate court to determine whether a trial court abused its discretion by restricting voir dire, the complaining party must adequately apprise the trial court of the nature of the inquiry he wishes to make of the venire panel. *Hyundai Motor Co. v. Vasquez*, 189 S.W.3d 743, 758 (Tex. 2006); *see also In re Commitment of Barbee*, 192

S.W.3d 835, 847 (Tex. App.—Beaumont 2006, no pet.) ("Because Barbee's counsel did not propose alternative questions, or articulate a desired line of inquiry, we cannot know whether the trial judge would have allowed proper questions[.]"). To preserve a complaint that the trial court improperly restricted voir dire, the complaining party must timely alert the trial court as to the specific manner in which it intends to pursue the inquiry so that the trial has the opportunity to cure any error. *Hyundai*, 189 S.W.3d at 758; *see also* Tex. R. App. P. 33.1(a). "Generally, where counsel merely states a subject area in which he wishes to propound questions, 'but fails to present the trial court with the specific questions he wishes to ask, the trial court is denied an opportunity to make a meaningful ruling and error is not preserved.'" *In re Commitment of Polk*, No. 09-10-00127-CV, 2011 WL 662928, at *3 (Tex. App.—Beaumont Feb. 24, 2011, pet. denied) (mem. op.) (quoting *Odom v. Clark*, 215 S.W.3d 571, 574 (Tex. App.—Tyler 2007, pet. denied)).

Weissinger complains of the following colloquy during his counsel's voir dire examination:

> [Defense counsel]: With respect to behavior abnormality, Texas law provides that a condition that affects a person's emotional or volitional capacity to the extent that he is predisposed to commit a sexually violent offense causes the person to have serious difficulty –

11

[State's counsel]: Objection, that's a misstatement of the law. This is not defined.

THE COURT: [Defense counsel], what are you trying to define?

[Defense counsel]: I'm focusing on Texas law as it applies to the effect on a [person's] emotional or volitional capacity.

THE COURT: We just need to be going with the statute. Okay?

[Defense counsel]: That's not the limit of Texas law, Your Honor.

THE COURT: For this case it's what's in the Texas statute. Please, again, don't disagree with the Court when the Court is telling you something.
I just want to tell the ladies and gentlemen, regardless of what these lawyers are telling you, when we get to the end and my 12 jurors are sitting over there I'm going to give you the law, and that's all you've got to follow. You may proceed.

[Defense counsel]: Are you going to allow me to go into the current State of Texas law with the effect on a person's emotional or volitional capacity?

THE COURT: I don't know what you're talking about here. So ask your question; you make your objection.

[Defense counsel]: So have to have serious difficulty controlling your behavior –

[State's counsel]: Objection to this statement. This is not the applicable current Texas law.

THE COURT: We need to talk about the current applicable Texas law. Not other State[s'] laws; just the State of Texas'[s] law. It's codified in the books, so that's what I'm going to allow you to talk about. Okay.

[Defense counsel]: So I can't –

THE COURT: My ruling is you talk about what's in the statute. It's 14 pages. Would you like a copy of it here? You can go over it with the venire panel if you need to. Next question, please.

[Defense counsel]: So I'm not going to be allowed to talk about case law?

THE COURT: Correct.  Thank you.

[The State]: And at this time I object to this slide highlighting in red the primary purpose. That does not have a definition.

[Defense counsel]: I didn't say that it did.

THE COURT: Whoa, whoa. Does that definition track the statute?

[The State]: The definition does track the statute.

THE COURT: Okay. He can talk about the definition then. You may proceed, [defense counsel].

[Defense counsel]: Thank you, Your Honor.
        In order to qualify as a sexually violent predator the State has to prove that Mr. Weissinger suffers from a behavior abnormality that makes him likely to engage in a predatory act. Predatory act is defined in the statute as an act directed toward individuals, including family members, for the primary purpose of victimization. So the State has to prove that, whatever offenses they claim he's going to commit in the future, will be committed for the primary purposes of victimization.

The record as quoted above demonstrates that although defense counsel

indicated that he desired to question the venire panel concerning Texas case law

regarding emotional or volitional capacity, counsel did not proffer specific

13

questions that he wished to ask. Therefore, we conclude that Weissinger failed to preserve the issue for appellate review. *See Polk*, 2011 WL 662928, at *3; *Barbee*, 192 S.W.3d at 847; *see also* Tex. R. App. P. 33.1(a). Accordingly, we overrule issue four.

## ISSUES FIVE, SIX, AND SEVEN

In issue five, Weissinger complains of the trial court's refusal to permit him to cross-examine Arambula concerning whether he had read any of the judicial opinions regarding Chapter 841. In issue six, Weissinger challenges the trial court's refusal to allow him to cross-examine Arambula regarding his understanding of the concept of serious difficulty controlling behavior. In issue seven, Weissinger challenges the trial court's refusal to permit him to cross-examine Arambula regarding his rate of error. We address issues five, six, and seven together.

After the trial court refused to permit Weissinger's counsel to cross-examine Arambula regarding his familiarity with judicial opinions, his understanding of the concept of serious difficulty controlling behavior, and his rate of error, Weissinger made an offer of proof. During his offer of proof, Weissinger questioned Arambula concerning whether he taught that Chapter 841 was intended to apply to a small but extremely dangerous group of individuals who are not amenable to traditional

14

mental illness modalities, and Arambula responded that he "spoke about these commitment proceedings as reserved for particularly dangerous sex offenders, just like the statute describes." Arambula also testified during the offer of proof that the evaluation of sexual dangerousness is generally "an active component of one's forensic practice[.]" Arambula explained that he teaches about the group of sexually violent predators who are not amenable to traditional mental illness treatment modalities, as follows:

> [B]ecause this has to do with civil commitment, people who are civilly committed go to state mental hospitals, especially in our state. And those contain usually . . . serious illnesses like schizophrenia, severe bipolar disease. And it's those types of treatment interventions that sex offenders would probably be exposed to in the state hospital, and they clearly don't fit in there, through the normal civil commitment process.

> So there has to be a separate type of involuntary treatment that's individualized to the treatment of sex offenders, and that literature is broad. It exists all over this country. And so when I explained to the fellows how this law emerged from civil commitment, that was the reason, is because they're not sent to the state mental hospitals.

When asked whether he taught people that to meet the definition of a behavioral abnormality, the subject must have serious difficulty controlling his behavior, Arambula testified as follows, in pertinent part:

> I can't say that I have used that term specifically. I know that you like to use that term, but I haven't borrowed your phrase. I would rather talk about the model, the rigor of evaluating sexual dangerousness,

15

and that in cases that involve behavioral abnormality, these are particularly dangerous individuals who have serious illness. And so … because it's a serious illness, it's more dangerous than other illnesses, . . . everything is just amplified, including decision making, how often it emerges. The details are typically more forceful, if I can use that term.

Arambula testified that he teaches practitioners "to look for how the sexual deviance overcomes normal brain functioning, and to try as best as we can to explore that [in] an interview." Arambula further testified that he teaches practitioners to extract as many details about the offense as possible, but he also explained, "[m]any times just reading records, it's pretty obvious the individual can't control himself because no normal person would do that to a victim . . . ." Arambula explained that "because of their serious[] illness . . . everything is amplified. The degree of victimization, the frequency of victimization, the details many times are worse than garden-variety sex offenders. So I explain that they have to assess the severity of the illness, and those details speak for themselves once a clinician evaluates it."

When defense counsel asked Arambula whether he was familiar with the supervision people in civil commitment receive, the trial court interjected, "You don't have to answer that question. . . . Put your question on the record. . . . Half of them I won't let you[] answer, because that's just clearly not allowed. What's your next question, [defense counsel]?" Defense counsel then asked Arambula

16

whether he had read any reported judicial opinions regarding Chapter 841, and the trial judge again stated that he would not allow Arambula to answer.

When defense counsel asked Arambula what his rate of error is "with respect to the number of people that you have determined to have a behavioral abnormality that makes them likely to engage in a predatory act of sexual violence," and qualified that he was asking whether anyone Arambula had opined was a sexually violent predator had "gone on to engage in a predatory act of sexual violence[,]" the trial judge interjected, "No, because they're locked up. That's why that question is not allowed. That is misleading to the jury. That's why I don't allow that question." The trial judge also refused to permit Arambula to answer questions during the offer of proof regarding whether he was aware that the Council on Sex Offender Treatment issued a report every two years, in which the Council concluded that there was a zero rate of recidivism among people civilly committed in Texas. The trial judge also refused to allow Arambula to answer defense counsel's question about whether the zero percent rate of recidivism meant that none of Arambula's opinions have been correct.

We review the exclusion of expert testimony for an abuse of discretion. *In re Commitment of Day*, 342 S.W.3d 193, 218 (Tex. App.—Beaumont 2011, pet. denied). A trial court abuses its discretion when it excludes expert testimony that is

17

relevant to the issues in the case and is based on a reliable foundation. *State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009). The trial court's exclusion of evidence constitutes reversible error when the complaining party shows that the trial court erred and that its error probably caused the rendition of an improper judgment. *Id.*; *see also* Tex. R. App. P. 44.1(a). Excluding or admitting evidence is likely harmless if the evidence was cumulative or the rest of the evidence was so one-sided that the error likely made no difference in the judgment. *Cent. Expressway*, 302 S.W.3d at 870. The trial court understood that the proferred questions addressed the recidivism rate among patients who, unlike Weissinger, were in a treatment program. Thus, the trial court had discretion to exclude a misleading line of questions. Tex. R. Evid. 403. The fact that the trial court improperly disallowed this line of questioning in Weissinger's offer of proof did not preclude Weissinger from properly presenting his appeal. Even if we assume that there had been no recidivism in the treated class of those committed to a treatment program, it does not follow that Arambula's testimony that Weissinger would likely reoffend is incorrect.

We conclude that the proferred testimony, even if relevant, was not necessarily admissible. *See In re Commitment of Hill*, No. 09-11-00593-CV, 2013 WL 772834, at *7 (Tex. App.—Beaumont Feb. 28, 2013, pet. denied) (mem. op.).

18

Arambula testified regarding his training, experience, and credentials, and he explained that his methodology in evaluating Weissinger was in accordance with his training and experience as a psychiatrist and is the accepted method in his field for conducting a behavioral abnormality assessment. *See id.* Weissinger apparently offered the testimony regarding Arambula's familiarity with judicial opinions, understanding of the concept of serious difficulty controlling behavior, and rate of error in an attempt to make the jury question Arambula's credibility and reliability. Assuming without deciding that the trial court erred by limiting Weissinger's cross-examination of Arambula, given Arambula's testimony regarding his credentials, as well as his testimony supporting his methodology, we conclude that any error likely made no difference in the jury's verdict. *See* Tex. R. App. P. 44.1(a); *Hill*, 2013 WL 772834, at *7. Accordingly, we overrule issues five, six, and seven, and affirm the trial court's judgment and order of civil commitment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on June 18, 2013
Opinion Delivered June 27, 2013
Before McKeithen, C.J., Gaultney and Kreger, JJ.

19