In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-14-00157-CV**
_____

**IN RE COMMITMENT OF MICHAEL ANTHONY LUCERO**

_____

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 13-07-07143 CV**

_____

**MEMORANDUM OPINION**

The State of Texas filed a petition to civilly commit Michael Anthony Lucero (Lucero) as a sexually violent predator under the Sexually Violent Predator Act. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2014) (SVP statute). A jury found Lucero suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *Id*. § 841.003 (West Supp. 2014). The trial court entered a final judgment and an order of civil commitment under the SVP statute.

Lucero raises four issues on appeal. In his first issue, he argues that the trial

1

court erred by admitting "as substantive evidence" hearsay of details of charged and uncharged offenses. In his second and third issues, he argues that the evidence is legally and factually insufficient to support a finding that he has a behavioral abnormality. And in his fourth issue he contends that this Court's decision in *In re Commitment of Richard*, No. 09-13-00539-CV, 2014 WL 2931852 (Tex. App.—Beaumont June 26, 2014, pet. denied) (mem. op.), renders Chapter 841 unconstitutional. We overrule his issues and affirm the judgment of the trial court.

THE SVP STATUTE

Under the SVP statute, the State bears the burden of proving beyond a reasonable doubt that the person it seeks to commit for treatment is a sexually violent predator. Tex. Health & Safety Code Ann. § 841.062 (West Supp. 2014). As defined by the Legislature, a sexually violent predator is a person who "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id.* § 841.003(a) (West Supp. 2014).[1] Under the statute, a "'[b]ehavioral abnormality'" is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another

---

[1]The term "likely" is not defined in the SVP statute. *See* Tex. Health & Safety Code Ann. § 841.002 (West Supp. 2014) (Definitions).

2

person." *Id.* § 841.002(2) (West Supp. 2014). Previously, we have stated that "[a] condition which affects either emotional capacity or volitional capacity to the extent a person is predisposed to threaten the health and safety of others with acts of sexual violence is an abnormality which causes serious difficulty in behavior control." *In re Commitment of Almaguer*, 117 S.W.3d 500, 506 (Tex. App.— Beaumont 2003, pet. denied).

UNDERLYING FACTS AND TESTIMONY

Lucero was convicted in 1994 of the aggravated sexual assault of his four-year-old child, D.L. Lucero claims he was drunk at the time he committed the sexual assault, and he testified he did not remember if he had assaulted the child on other occasions. He received a ten-year sentence for the sexual assault of D.L. He was released from prison in July of 2003, and he was required to register as a sex offender. He refused to register as required, and he moved into a residence that was one block from an elementary school. In 2006, he pleaded guilty to two counts of violating the terms of his release. In 2006, he was also convicted of indecency with a child by sexual contact, and he was sentenced to eight years in prison. E.B. was the victim in the 2006 offense, and she was the six-year-old child of Lucero's girlfriend.

At Lucero's commitment trial, the State read Lucero's responses to Requests for Admissions into the record. Therein, Lucero admitted that he knew it was

3

wrong to sexually offend against D.L. and E.B., that he did not need sex offender treatment, that he had never completed a Sex Offender Treatment Program, and that he was "a sex offender." Lucero admitted at trial that he had other arrests and at least one conviction for theft that occurred before his conviction for the aggravated sexual assault of his four-year-old daughter. The State also offered and the trial court admitted the penitentiary packets for Lucero into evidence. In response to questions from the State's attorney, Lucero agreed that on or about October 31, 1992, he committed the sexual offense of aggravated sexual assault against his four-year-old daughter. The records related to the 1992 sexual assault were admitted into evidence and reflect the details of Lucero's sexual assault on the child. When questioned about the details of the sexual assault, Lucero stated that he could not remember what he did to his child because at the time he had been drinking. Lucero also said he could not remember if he had sexually assaulted his daughter on other occasions.

When questioned about his 2006 conviction, Lucero agreed that he "sexually assaulted" six-year-old E.B. and that he was charged with and convicted for indecency with a child by sexual contact. He told the jury that he was at a picnic with E.B.'s mother, and that he and E.B.'s mother were "making out" when E.B.

> came running to where I was and she jumped in my lap and she got in
> between my legs and I was aroused already because [E.B.'s mother]
> was there, kissing on me and making out with me. And [E.B.] was in

4

between my legs and I had an erection, and I used her as an object and I grabbed her hand and I rubbed my -- her hand on my penis.

With respect to the sexual assault of E.B., Lucero further explained that he "seized the opportunity" because E.B. was there, and he agreed that he was just using E.B. to sexually gratify himself. Lucero was also questioned about a "hickey" he put on E.B.'s neck on a different occasion; but he told the jury E.B. saw a "hickey" on her mother's neck and that E.B. asked Lucero about it and wanted one too, so he then grabbed her skin and twisted it to give her one.

At trial, Lucero also stated that he had triggers such as depression, rejection, low self-esteem, and inadequacy. He told the jury some situations present a high risk and trigger him to think about sexually offending, including "skimpy clothes, clubs, pornography, hanging around girls who give me a lot of attention . . . [h]anging in malls with girls or at -- or places where children are at, swimming pools, areas like that, drinking alcohol." Lucero also testified that at the time of the trial he was in the sixteenth month of an eighteen-month sex offender program, but that even if he completes the program and is released, he believes his need for treatment is "constant" and he will continue to go to therapy. He also stated that he felt "it would be a wise idea" for him to stay away from children, even his grandchildren and his own child. With respect to his own child he stated:

I believe that if I was to see her, I would need to have supervision, like I said, until I know that this treatment is working.

5

Because it's one thing to be here in prison, it's another thing to put it out in practice in the free world.

When he was asked whether he thought he was at risk to reoffend, Lucero stated, "I think I'm maybe a moderate risk maybe, but—I mean, I think treatment can work for me, and I think putting it to practice would prove that."

Dr. Self, a medical doctor who is board certified in general psychiatry, testified on behalf of the State. He explained to the jury that there are some broad categories of risk factors associated with increased risk of recidivism such as "sexual criminal history, sexual deviancy, lifestyle instability and criminality, intimacy deficits, and response to treatment and supervision." Dr. Self testified further that the facts of the offenses can be important in helping him reach his opinion as to whether Lucero has a behavioral abnormality, and that he relied upon Lucero's convictions and legal documents, the victim characteristics, and the other offenses that did not result in an indictment or conviction.

Dr. Self explained to the jury that he used the same methodology used by other forensic psychiatrists performing behavioral abnormality evaluations. He diagnosed Lucero with pedophilia, and he explained to the jury that pedophilia is "a chronic condition." According to Dr. Self, he found it "very significant" that Lucero spent ten years in prison for sexually offending against one child, then he sexually offended against another child within two years of being released from

6

prison for the earlier offense. Dr. Self stated, "I don't think he can control it[.]" He also described Lucero as having "adult antisocial behavior." As noted by Dr. Self, Lucero has done well in prison, but not in the free world. According to Dr. Self, this is frequently true of pedophiles. He also diagnosed Lucero with alcohol dependence in institutional remission. Dr. Self explained that Lucero's history of alcohol abuse and dependence is significant in that it elevates his risk of reoffending.

Dr. Self reached the opinion that Lucero "suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence[.]" Dr. Self told the jury that the SVP statute does not define "likely." He defines "likely" as "[m]ore than a mere possibility." Dr. Self stated there is no percentage assigned to the term. He explained that because sexual offenses have severe and lasting effects on the victims, even small percentages are "of concern." Dr. Self found Lucero's risk to be "unacceptable" and higher than the general population of sex offenders. Some of the risk factors he identified for Lucero include pedophilia (a sexual deviance), two convictions for sexually violent offenses, failing to report while being supervised, lifestyle instability, and alcohol dependence.

Dr. Tennison, a medical doctor and board certified psychiatrist, testified on behalf of Lucero. Dr. Tennison testified that Lucero meets the definition of a

pedophile "in terms of behaviors and history." Dr. Tennison also agreed that Lucero has alcohol dependence. He stated that the offenses committed by Lucero did not show that there was a history of Lucero "active[ly] seeking out" victims. According to Dr. Tennison, because Lucero's sexual offenses were against familial children his risk of reoffending is lower than an offender who offends against non-family members. He agreed that Lucero has displayed adult antisocial behavior but not a personality disorder. Dr. Tennison agreed that previous convictions for sex offenses are a risk factor. According to Dr. Tennison, "the statistics have shown that, as the number of offenses go up . . . the risk of future sexual recidivism, generally, is higher as well." He does not believe Lucero's alcohol dependence is a risk factor, because he does not believe the influence of alcohol is a congenital or acquired condition. Dr. Tennison also stated that a person's nonsexual criminal history or his antisocial behavior should not be risk factors. He testified that in his opinion Lucero does not suffer from a behavioral abnormality. According to Dr. Tennison, Lucero scored a 2 on the Static-99R, which falls into the low-moderate risk range. Dr. Tennison testified that based on the Texas norms, a score of 2 puts the person at a 0%-to-6.7% chance of recidivism. Dr. Tennison does not consider Lucero to have a behavioral abnormality because he does not believe Lucero is "likely" to reoffend. Dr. Tennison explained that his definition of "likely" requires more than a 50% chance of reoffending.

8

ADMISSION OF EVIDENCE

In Lucero's first issue, he contends that

> the trial court erred in admitting as substantive evidence for its truth[,] hearsay of various details of the charged and convicted 1992 offense and 2005 offense[,] and hearsay that Lucero committed numerous uncharged and unadjudicated offenses against the complainant in the 1992 case, the complainant in the 2005 case[,] and the sister of the complainant in the 2005 case.

Lucero admits the trial court purportedly admitted the hearsay evidence as "basis" evidence. He further acknowledges that the trial court gave the jury an instruction not to consider the hearsay evidence for its truth but only for the limited purpose of explaining the basis of the expert's opinion, and further that it allowed Lucero a "running" hearsay objection to the admission of this evidence. However, he argues "it is apparent that this evidence was also admitted (and used by the SPU) as substantive evidence for its truth without any limitation."

The State argues that Lucero failed to preserve this issue for appellate review. In order to preserve an issue for appellate review, a timely objection must be made in the trial court, and a ruling on the objection must be received. Tex. R. App. P. 33.1(a). An issue on appeal that does not comport with an objection made at trial is waived. *See In re Commitment of Weissinger*, No. 09-12-00486-CV, 2013 WL 3355758, at *3 (Tex. App.—Beaumont June 27, 2013, pet. denied) (mem. op.)

9

(citing *Moser v. Davis*, 79 S.W.3d 162, 169 (Tex. App.—Amarillo 2002, no pet.)

and Tex. R. App. P. 33.1(a)).

During Dr. Self's testimony, the State asked Dr. Self about the various risk

factors, and the following exchange occurred:

> Q. Well, how many sexual offenses, I guess, does he -- how many sexual offense convictions does Mr. Lucero have that go under this sexual criminal history category?
>
> A. Well, he's got two violent contact sexual offenses.
>
> Q. Okay.
>
> A. He's got aggravated sexual assault of a child, I believe, in 1993, that was a biologic [sic] daughter of his that he was -- he was indicted for rectal --
>
> [DEFENSE ATTORNEY]: Objection. Your Honor, at this point the testimony that is being elicited from this witness is hearsay. I would ask for a limiting instruction at this point on hearsay.
>
> THE COURT: All right. Ladies and gentlemen, hearsay is an issue, it's an objection as to the evidence. Hearsay is a statement other than one that is made by a declarant or a witness while testifying in trial or a hearing, which is offered to prove the truth of the matter which is being asserted. However, there are certain types of hearsay and information contained in records reviewed by experts which is admitted to you through the expert's testimony. Such hearsay is being admitted only for the purposes of showing the basis of the expert's opinion and cannot be considered as evidence to prove the truth of the matter asserted.
>
> [DEFENSE ATTORNEY]: Your Honor, may I have a running objection to the hearsay testimony of Dr. Self?
>
> THE COURT: Any objection to a running objection?

10

[STATE'S ATTORNEY]: No, Your Honor.

THE COURT: That being the case, fine. Thank you.

[DEFENSE ATTORNEY]: Thank you, Judge.

On appeal, Lucero argues that the trial court erred by admitting hearsay "as substantive evidence for its truth." Lucero never received a ruling on his hearsay objection at trial, but he did ask for a limiting instruction. The trial court gave a limiting instruction to the jury as requested. Lucero also asked for a running objection to "the hearsay testimony of Dr. Self[,]" which the record indicates the court allowed.

The admission of evidence is reviewed under an abuse of discretion standard. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998); *In re Commitment of Salazar*, No. 09-07-345 CV, 2008 WL 4998273, at *2 (Tex. App.—Beaumont Nov. 26, 2008, pet. denied) (mem. op.). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *E.I. du Pont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995). A judgment will not be reversed based on the admission of evidence unless the appellant establishes that the trial court's ruling was in error and that the error was reasonably calculated to cause and probably did cause the rendition of an

11

improper judgment. *Salazar*, 2008 WL 4998273, at *2; *see also* Tex. R. App. P. 44.1(a).

Under Rule 705 of the Texas Rules of Evidence, an expert may disclose on direct examination, or be required to disclose on cross-examination, the underlying facts or data on which he bases his opinion. Tex. R. Evid. 705(a); *In re Commitment of Yaw*, No. 09-08-042 CV, 2008 WL 5096511, at *1 (Tex. App.— Beaumont Dec. 4, 2008, no pet.) (mem. op.). Rule 705(d) provides as follows:

> When the underlying facts or data would be inadmissible in evidence, the court shall exclude the underlying facts or data if the danger that they will be used for a purpose other than as explanation or support for the expert's opinion outweighs their value as explanation or support or are unfairly prejudicial. If otherwise inadmissible facts or data are disclosed before the jury, a limiting instruction by the court shall be given upon request.

Tex. R. Evid. 705(d). "When an expert relies upon hearsay in forming his opinion, and it is of a type reasonably relied upon by such experts, the jury is generally permitted to hear it." *Salazar*, 2008 WL 4998273, at *4.

We conclude that it was not error for the trial court to allow Dr. Self to testify about the details of the underlying charged and uncharged offenses or about the contents of the files, as to the 1992 or 2005 offenses or as to whether or not he also assaulted E.B.'s sister. Dr. Self explained that he reviewed that information along with all the other items regarding Lucero. Dr. Self further stated that the facts related to Lucero's past offenses, the convictions, and the other allegations of

12

charged and uncharged offenses were relevant to his determination of whether Lucero has a behavioral abnormality. Dr. Self stated that the information contained in the records relating to Lucero's past behavior is generally relied upon by experts in making these types of reviews; and he explained to the jury how and why the underlying offenses and factual information as provided by the victims assisted him in evaluating Lucero and in determining whether Lucero has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Even if we assume, as argued by Lucero on appeal, that the trial court implicitly overruled Lucero's hearsay objection and that Lucero had adequately preserved the objection he now makes on appeal, it was not error for the trial court to admit the testimony as evidence showing the basis of the experts' respective opinions as basis evidence. *See* Tex. R. Evid. 703, 705.

Under Rule 705(a) of the Texas Rules of Evidence, an expert may disclose on direct examination, or be required to disclose on cross-examination, the underlying facts or data that formed the basis of the expert's opinion, including the defendant's prior offenses. *See, e.g., In re Commitment of Camarillo*, No. 09-12-00304-CV, 2013 WL 2732662, at \*\*3-4 (Tex. App.—Beaumont June 13, 2013, no pet.) (mem. op.); *In re Commitment of Day*, 342 S.W.3d 193, 197-99 (Tex. App.—Beaumont 2011, pet. denied). Given the purpose for admitting the evidence under Rule 705 and the trial court's limiting instructions, the trial court could have

reasonably concluded that the evidence was admissible. *See* Tex. R. Evid. 705(d); *In re Commitment of Simmons*, No. 09-11-00507-CV, 2013 WL 2285865, at \*\*2-5 (Tex. App.—Beaumont May 23, 2013, no pet.) (mem. op.); *In re Commitment of Ford*, No. 09-11-00425-CV, 2012 WL 983323, at \*2 (Tex. App.—Beaumont Mar. 22, 2012, no pet.) (mem. op.); *Day,* 342 S.W.3d at 197-99.

Furthermore, no judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of probably caused the rendition of an improper verdict or probably prevented the appellant from properly presenting the case to the court of appeals. Tex. R. App. P. 44.1(a)(1), (2). Lucero has not alleged that the trial court's ruling prevented him from presenting his points on appeal. Additionally, Lucero does not explain how the court's ruling along with the limiting instruction probably caused the rendition of an improper verdict. The trial court gave the jury an oral limiting instruction and a written limiting instruction relating to the particular testimony at issue. Lucero did not object to either instruction at trial, nor does he argue on appeal that the instructions were in any way deficient. We presume that the jury followed the court's instructions. *See Day*, 342 S.W.3d at 198-99. We overrule his first issue.

LEGAL AND FACTUAL SUFFICIENCY

In his second issue on appeal, Lucero argues that the evidence is legally insufficient to support a finding that Lucero has a behavioral abnormality. And in his third issue he argues the evidence is factually insufficient to support a finding that he has a behavioral abnormality.

In SVP cases, the State must prove the elements of its case beyond a reasonable doubt. *See* Tex. Health & Safety Code Ann. § 841.062(a). Because the statute places upon the State the burden of proof employed in criminal law, this Court has adopted the appellate standard of review in criminal cases for legal sufficiency of the evidence. *See In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex. App.—Beaumont 2002, pet. denied) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In a legal sufficiency review, this court reviews all of the evidence in a light most favorable to the verdict. *Id*.

We must determine if a rational factfinder could have found, beyond a reasonable doubt, that Lucero is a sexually violent predator. Under Texas law, a person is a "sexually violent predator" under the statute if the person: "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." Tex. Health & Safety Code Ann. § 841.003(a). A "[b]ehavioral abnormality" is "a congenital or acquired condition that, by affecting a person's emotional or

15

volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2). To prevail on his legal sufficiency issue, Lucero is required to demonstrate that no evidence supports the jury's finding. *See Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983); *Christus St. Mary Hosp. v. O'Banion*, 227 S.W.3d 868, 873 (Tex. App.—Beaumont 2007, pet. denied). "[W]hether a person 'suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence' is a single, unified issue." *In re Commitment of Bohannan*, 388 S.W.3d 296, 303 (Tex. 2012), *cert. denied*, 133 S.Ct. 2746 (2013).

Lucero complains on appeal that the evidence is legally and factually insufficient because the State's expert, Dr. Self, used a definition of "likely" to mean "more than a mere probability." According to Lucero, the evidence at trial shows a likelihood of only 0% to 6.7% that Lucero will reoffend. Lucero argues that the Legislature could not have meant for the term "likely" to mean "more than a mere possibility." Lucero contends that "likely" should be construed as meaning a "degree of probability greater than five on a scale of one to ten," and as it is most often used to mean "more likely than not."[2]

---

[2]Lucero cites to language from a section of this Court's opinion in *In re Commitment of Weatherread*, No. 09-11-00269-CV, 2012 WL 5960196, at *3

16

We have previously concluded that Dr. Self's working definition of "more than a mere possibility" does not render the evidence in an SVP case legally or factually insufficient. *See In re Commitment of Muzzy*, No. 09-13-00496-CV, 2014 WL 1778254, at *2 (Tex. App.—Beaumont May 1, 2014, pet. denied) (mem. op.). In *Muzzy* we stated:

> First, Muzzy complains of the experts' definitions of "likely." Self defined "likely" as "[m]ore than a mere possibility." Dunham explained that the meaning of "likely" is "up to each individual evaluator or clinician[,]" but that he believed "likely" to mean "a pretty good chance something is going to happen." Muzzy argues that both these definitions fail to "comport with the constitutional requirements for involuntary civil commitment." However, this Court has rejected the notion that the term "likely" has a precise definition of the type associated with any certain assigned percentage of risk. *In re Commitment of Kalati*, 370 S.W.3d 435, 439 (Tex. App.—Beaumont 2012, pet. denied). Additionally, the experts' testimony is not insufficient merely because the term "likely" is not defined by the statute or case law. *In re Commitment of Kirsch*, No. 09-08-00004-CV, 2009 Tex. App. LEXIS 5436, at *17 (Tex. App.—Beaumont July 16, 2009, pet. denied) (mem. op.). Nor does an expert's explanation of the term "likely," in and of itself, render the evidence insufficient to support a jury's finding that a person suffers from a behavioral abnormality. *Id*. at *19. Rather, an expert's definition merely goes to the weight that the jury might give the expert's testimony. *Id*.

*Id.*

---

(Tex. App.—Beaumont Nov. 29, 2012, pet. denied) (mem. op.). But in *Weatherread*, we acknowledged and reaffirmed our earlier rulings that expert testimony defining "likely" as "beyond a mere possibility" is "consistent with how dictionaries commonly define that term and with the *Bohannan* Court's construction of the statute[.]" *Weatherread*, 2012 WL 5960196, at *3.

As noted in *Muzzy*, we have rejected the argument that the term "likely" requires a certain assigned percentage of risk. Rather, the expert's definition of "likely" in the context of the statute goes to the weight that the jury might give the expert's testimony. *See also Kalati*, 370 S.W.3d at 439 ("We reject the implication raised by [the appellant's] argument that the term 'likely' has a precise definition of the type associated with any certain assigned percentage of risk."); *In re Commitment of Rushing*, No. 09-11-00268-CV, 2012 WL 4466421, at *2 (Tex. App.—Beaumont Sept. 27, 2012, no pet.) (mem. op.) ("Noticeably absent from the statute describing a sexually violent predator is any requirement that the person's behavioral abnormality make the person *more likely than not* to engage in a predatory act of sexual violence.") (emphasis in original). Consistent with our prior rulings, we reject Lucero's argument that "likely to engage" requires the expert to find a specific percentage or risk, and we refuse the invitation from Lucero to rewrite the statutory provision to include the phrase "more likely than not."

Dr. Self and Dr. Tennison explained their methodology to the jury, and they had a difference of opinion regarding whether Lucero suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. It was up to the jury to resolve the conflicts in the experts' testimony and to determine the weight to be given thereto. *Mullens*, 92 S.W.3d at 887. Viewed in a light most favorable to the verdict, a rational trier of fact could have found beyond

a reasonable doubt that Lucero is a sexually violent predator. Therefore, the evidence is legally sufficient. *See id.* at 885. Accordingly, the second issue is overruled.

In issue three, Lucero contends that the evidence is factually insufficient to support the jury's verdict. Under a factual sufficiency review, we weigh the evidence to determine "whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial." *Day*, 342 S.W.3d at 213.

The jury heard evidence regarding Lucero's criminal history, including his sexual offenses. Lucero admitted his convictions for two sexual offenses, as well as other criminal convictions, including failure to register as a sex offender. Lucero also admitted that he still needs "supervision," that he does not know if his treatment is working, and that he has some situations that present a high risk and trigger him to think about sexually offending, including "skimpy clothes, clubs, pornography, hanging around girls who give me a lot of attention . . . [h]anging in malls with girls or at -- or places where children are at, swimming pools, areas like that, drinking alcohol."

Dr. Self testified that Lucero suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Dr. Self diagnosed Lucero with pedophilia, adult antisocial behavior, and alcohol

19

dependence in institutional remission. He further testified that pedophilia is a chronic condition. Dr. Self explained that Lucero has the following risk factors: pedophilia (a sexual deviance), two convictions for sexually violent offenses, failing to report while being supervised, lifestyle instability, and alcohol dependence. Dr. Tennison testified that Lucero does not have a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence, although he agreed that Lucero has pedophilic disorder and alcohol dependence.

On the record before us, we find there is no risk of injustice that would demand ordering a new trial. A difference of opinion from the competing experts does not render the evidence in this case factually insufficient. "It is the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See In re Commitment of Myers*, 350 S.W.3d 122, 130 (Tex. App.— Beaumont 2011, pet. denied). The absence of expert testimony that Lucero is "more likely than not to commit a future predatory act of sexual violence" does not render the evidence legally or factually insufficient to sustain the finding that Lucero suffers from a behavioral abnormality that makes him likely to engage in a predatory act. Dr. Self's explanation that he defines the term "likely" to mean beyond a mere possibility does not render the evidence insufficient to support a jury's finding that Lucero suffers from a behavioral abnormality that makes him

20

likely to engage in a predatory act of sexual violence. *See Muzzy*, 2014 WL 1778254, at *2. In addition to the competing expert opinions, the jury was presented with evidence and details of Lucero's convictions for sexually violent offenses, with his refusal to register as a sex offender, and his failure to report while being supervised, and with evidence that he was a pedophile, had a lifestyle instability, alcohol dependence, and other risk factors. Additionally, the jury heard Lucero admit that he continues to need sex offender treatment and that "it would be a wise idea" if he stayed away from children, including his grandchildren and his own child. We conclude that the jury's verdict is supported by factually sufficient evidence. *See Myers*, 350 S.W.3d at 130 (citing to *In re Almaguer*, 117 S.W.3d at 505-06). We overrule Lucero's third issue.

*IN RE COMMITMENT OF RICHARD*

In his fourth and final issue, Lucero argues that this Court's decision in *In re Commitment of Richard*, No. 09-13-00539-CV, 2014 WL 2931852 (Tex. App.—Beaumont June 26, 2014, pet. denied) (mem. op.), renders Chapter 841 both facially unconstitutional and unconstitutional as applied to Lucero.

To preserve a complaint for appellate review, Lucero must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling. *See* Tex. R. App. P. 33.1. Even a constitutional challenge can be waived if not properly raised in the trial court. *See Loftin v. Lee*, 341

21

S.W.3d 352, 356-57 n.11 (Tex. 2011) (a party that did not raise constitutional issues in the trial court cannot argue them on appeal). The complaining party must also show that the trial court ruled on the request, objection, or motion "either expressly or impliedly." Tex. R. App. P. 33.1(a)(2)(A).

Lucero does not contend that he raised this issue or argument at trial. Rather, he argues in his reply brief that he raised it "as soon as he could[,]" but he says that this Court's *Richard* decision was decided after Lucero's trial, and therefore he could not have made the argument to the trial court.[3] At trial, Lucero did not challenge the SVP statute or its application to him on any constitutional grounds. To the extent Lucero is now attempting on appeal to make a constitutional challenge to the SVP statute that he failed to make at trial, he failed to preserve his challenge. *See* Tex. R. App. P. 33.1(a) (requiring issues to be raised and ruled on by the trial court in order to preserve them for appellate review); *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex. 1993) (holding even constitutional claims must be timely asserted).

---

[3]Alternatively, in his Reply Brief, Lucero cites to Texas Rule of Appellate Procedure 2, and he asks this Court to suspend the requirements of Texas Rule of Appellate Procedure 33.1. We find no basis in the record before us to suspend the application of Rule 33.1. Lucero fails to explain how a suspension of our rules would "expedite a decision" and he also fails to demonstrate "good cause" for this Court to suspend the operation of Rule 33.1.

Notably, Lucero fails to specify which sections of Chapter 841 are unconstitutional and which constitutional rights have been violated. With respect to his facial constitutional challenge, Lucero also fails to demonstrate that the statute is on its face unconstitutional in every respect. *Wilson v. Andrews*, 10 S.W.3d 663, 670 (Tex. 1999); *see also Fisher*, 164 S.W.3d at 654-55. And with respect to his as-applied challenge he fails to demonstrate how the statute, as applied to him, is unconstitutional. Instead, he contends our ruling in *Richard* "renders Chapter 841 unconstitutional." We overrule Lucero's facial constitutional challenge and his as-applied challenge.[4]

Furthermore, to the extent Lucero's fourth issue is an invitation for this Court to revisit, overrule, or otherwise modify our finding in *In re Commitment of Richard*, we decline his invitation. Lucero argues that the effect of *Richard* is that a State's expert is not required to make a "mental diagnosis" and that then renders Chapter 841 unconstitutional because it allows a person to be civilly committed based solely on a finding of dangerousness or increased risk of sexually violent

---

[4] Lucero complains that the ruling in *Richard* allows the civil commitment of a person who has not been diagnosed with any mental disorder or condition. But the record demonstrates that Lucero was diagnosed by Dr. Self and Dr. Tennison to have pedophilia. Dr. Self also diagnosed Lucero with "adult antisocial behavior," and he concluded that Lucero has a "behavioral abnormality." In *Richard*, the State's expert diagnosed Richard with paraphilia and reached the opinion that Richard suffers from a "behavioral abnormality" making him likely to commit sexually violent conduct. *Richard*, 2014 WL 2931852, at *2.

conduct. Lucero contends that the Supreme Court's ruling in *Kansas v. Hendricks*, 521 U.S. 346, 358-59 (1997), requires some type of "mental condition" or "ailment of the mind," even though a "mental illness" is not required. Lucero further contends that the standard outlined in *Richard*, when combined with the testimony of Dr. Self in this case, allows Lucero to be civilly committed as a sexually violent predator when he has almost a zero percent risk of reoffending, which Lucero argues is contrary to the Supreme Court's decision in *Hendricks*.

Lucero has misapplied the holding in *Richard* and *Hendricks*. Our decision in *Richard* is entirely consistent with *Hendricks* and it does not render the statute unconstitutional. In *Richard*, this Court stated that a finding of a "mental diagnosis" is not a prerequisite for civil commitment. 2014 WL 2931852, at *2 (The State's expert "was not required to make any mental diagnosis[.]"). Similarly, in *Hendricks*, the Supreme Court rejected the argument that a finding of a "mental illness" is a prerequisite for civil commitment. 521 U.S. at 358-59.

And our analysis in *Richard* applies to Lucero. In *Richard*, we concluded that the evidence was legally and factually sufficient to sustain the verdict, that the expert's definition of "likely" and competing testimony of the experts would go to the weight of the evidence, and that the jury could rationally have determined that Richard is a sexually violent predator after considering Richard's own testimony, his past behavior, and the testimony of all of the experts. 2014 WL 2931852, at *3.

24

The evidence is also legally and factually sufficient to sustain the jury's verdict regarding Lucero. The jury could rationally have determined that Lucero is a sexually violent predator after considering the evidence in the record, including but not limited to Lucero's own testimony, his past behavior, and the testimony of all of the experts.

Furthermore, as we have previously explained, the plain wording of Chapter 841 does not require a medical diagnosis or a mental illness as a prerequisite for commitment. *Richard*, 2014 WL 2931852, at *2; *see also Bohannan*, 388 S.W.3d at 306. Under Texas law, a person is a "sexually violent predator," under the statute if the person: "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." Tex. Health & Safety Code Ann. § 841.003(a). The statute contains a definition of "behavioral abnormality," and "sexually violent predator."[5] As explained by the Texas Supreme Court, "boiling it down," the definition of behavioral abnormality is "'a . . . condition that . . . predisposes' sexually violent conduct." *Bohannan*, 388 S.W.3d at 303. And "the import of predisposition and likelihood is exactly the same: increased risk." *Id*. at 302-03; *see also In re Commitment of Anderson*, 392 S.W.3d 878, 885-87 (Tex. App.—Beaumont 2013, pet. denied). Our *Richard* ruling does not render Chapter 841 facially

---

[5]*See* Tex. Health & Safety Code Ann. §§ 841.002(2), 841.003.

25

unconstitutional, nor does it operate to make the statute unconstitutional as applied to Lucero. We overrule Lucero's fourth issue.

Appellant's issues are overruled. The judgment is affirmed.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on November 21, 2014
Opinion Delivered February 5, 2015

Before Kreger, Horton, and Johnson, JJ.