

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-15-00081-CV

_____

LARRY NEAL SULLIVAN, APPELLANT

V.

YVONNE MADELINE MARIE LEPAGE-SULLIVAN, APPELLEE

On Appeal from the 137th District Court
Lubbock County, Texas
Trial Court No. 2013-505,860; Honorable John J. McClendon III, Presiding

January 25, 2017

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant, Larry Neal Sullivan, a licensed attorney representing himself on appeal, questions numerous aspects of the *Final Decree of Divorce* ending his marriage to Appellee, Yvonne Madeline Marie Lepage-Sullivan. Yvonne also represents herself in this appeal, *pro se.* We modify the decree of divorce and affirm the decree as modified.

By his brief, Larry presents two sections, each including a litany of multifarious complaints. The first section is entitled "'No Evidence' and 'Insufficient Evidence' Points of Error." In this section he raises nine separate "points of error." The second section of his brief, entitled "Fundamental Errors," presents four instances of alleged denial of due process.[1] Yvonne filed her *pro se* brief challenging Larry's arguments and also seeking affirmative relief in her prayer.[2] Larry filed a reply brief challenging her assertions, pointing out that Yvonne is not entitled to affirmative relief because she did not file a cross-appeal, and opposing matters outside the appellate record.[3]

By a post-submission supplemental brief, Larry cites this court to *Vega v. Vega*, No. 07-14-00208-CV, 2016 Tex. App. LEXIS 1767 (Tex. App.—Amarillo Feb. 18, 2016, no pet.) (holding that a trial court cannot render a valid agreed judgment absent consent at the time it is rendered), contending that he repudiated a putative Rule 11 agreement prior to the final hearing. He also argues he should receive a credit on his child support payments for social security child benefits that Yvonne receives as their child's representative. Essentially, Larry's complaints are directed at the temporary orders entered prior to the final hearing, the characterization and division of marital property, the apportionment of liabilities incurred during marriage, and issues affecting the parent-child relationship.

---

[1] The specific complaints will be discussed in the analysis portions of this opinion. For purposes of clarity, we will refer to each complaint as an "issue."

[2] Because Yvonne did not file a cross-appeal, she cannot seek to alter the trial court's judgment. TEX. R. APP. P. 25.1(c).

[3] This court does not consider matters raised in appellate briefs that were not before the trial court and which are not included in the appellate record. *Tex. Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 870 (Tex. 2001).

BACKGROUND

The parties were married in September 2009. At that time, they were both in their sixties. Yvonne had a three-year-old boy, not her biological child, whom the parties adopted.[4] At the time, Larry was employed as an assistant professor at Texas Tech University and he was receiving social security old age benefits. As a recipient of those benefits, after the adoption, he also began receiving an additional $711 per month in social security child benefits as his son's representative. In October 2012, prior to the separation of the parties and the filing of this divorce proceeding, Yvonne elected to begin receiving her social security old age benefits and also applied to receive her son's benefits. Because her earnings record entitled her to a higher benefit than that based on Larry's earnings record, pursuant to federal regulations,[5] their son was entitled to the higher amount of child benefits. Yvonne became the child's "representative" for social security purposes and began receiving child benefits in the amount of $966 per month. At the same time, Larry ceased receiving the $711 in monthly child benefits that was based on his earnings record.

In the fall of 2012, the marital relationship deteriorated. In late February 2013, while Larry was out of town, Yvonne and the child moved to Arizona to live with two of her adult sons. On February 27, 2013, acting *pro se*, Larry filed his *Original Petition for Divorce* in Lubbock County. His case was assigned to the 137th District Court. Later that same day, Yvonne also filed her own *Original Petition for Divorce* in Lubbock

---

[4] Yvonne also has three adult sons.

[5] *See* 20 CFR §§ 404.350, 404.353. Section 404.353(b) provides, "[i]f you are entitled to a child's benefit on more than one person's earnings record, you will ordinarily receive only the benefit payable on the record with the highest primary insurance amount."

3

County.[6] Her petition was assigned to the 72nd District Court. Both petitions asserted insupportability as the grounds for divorce. Pursuant to Yvonne's motion, the two cases were consolidated into the earlier filed cause of action with Larry designated as the Petitioner and Yvonne as the Respondent.

On April 16, 2013, the parties appeared in person and by counsel and announced an agreement on Yvonne's motion for temporary orders.[7] A *Report of Associate Judge* (*Temporary Orders*) was filed the next day bearing Larry's signature. The report specifically provided that Yvonne's counsel would prepare and submit formal temporary orders within ten days. On May 21, 2013, temporary orders were entered in which the trial court appointed the parties as temporary joint managing conservators.[8] Yvonne was granted the exclusive right to designate the primary residence of the child and Larry was ordered to pay $925 per month in child support, commencing April 16, 2013.[9] Because of the child's year-round school schedule, the temporary orders also modified the standard possession provisions of the Texas Family Code.[10]

On June 6, 2013, dissatisfied with the temporary orders, Larry discharged his original counsel and retained new counsel, Christopher D. Wanner. Eight days later, his new counsel filed a *Motion to Set Aside Temporary Order and Motion to Set Case for*

---

[6] At the time, Yvonne was represented by counsel, Jolyn C. Wilkins.

[7] At the time, Larry was represented by retained counsel, Everett Seymore, while Yvonne was still represented by Jolyn Wilkins.

[8] The *Temporary Orders* were signed by Larry's and Yvonne's counsel "APPROVED AS TO FORM ONLY." Neither Larry nor Yvonne signed the *Temporary Orders.*

[9] In the final decree, the trial court reduced the child support payments to $920.55 per month, commencing December 1, 2014.

[10] TEX. FAM. CODE ANN. §§ 153.3101-153.317 (West 2014 and West Supp. 2016).

*Final Hearing.* The motion sought to vacate the temporary orders by claiming Larry's original counsel had rushed him into signing the associate judge's report without providing him an opportunity to read its content. The trial court declined to set a hearing on Larry's motion to set aside the temporary orders and instead proceeded to a final hearing.

On September 16, 2013, a final hearing was held. Both parties appeared in person and by their respective counsel. At the conclusion of that hearing, the trial court declined to vacate the temporary orders stating Larry was an attorney and should have understood what he had signed. The court directed Larry to submit a proposal for the disposition of the remaining issues, including the division of the marital estate and the allocation of outstanding debts. Yvonne's disposition proposal had been introduced into evidence at the final hearing. A few days after the hearing, Larry submitted his disposition proposal to the trial court, and when entry of a final decree of divorce was not forthcoming, Larry filed motions to enter judgment in December 2013, and again in July 2014. More than fourteen months after the final hearing was held, the trial court signed a *Final Decree of Divorce* on December 2, 2014. Larry timely filed a *pro se* notice of appeal on March 2, 2015.[11]

---

[11] On December 15, 2014, Larry filed a motion to modify the divorce decree contending that certain provisions were not agreed to and seeking a reduction in child support after his employment contract with Texas Tech expired in May 2014. He also alleged the trial court no longer had continuing jurisdiction over his minor child who had made Arizona his home state. By filing a motion to modify the decree of divorce, the deadline for filing notice of appeal was extended 90 days after the decree was signed. *See* TEX. R. APP. P. 26.1(a)(2). To the extent that Larry's motion seeks to invoke the continuing jurisdiction of the trial court to modify an order in a Suit Affecting the Parent-Child Relationship, the record before us does not reflect whether the trial court ever ruled on that motion. Without a final judgment on those issues, this court may not address them at this time.

Larry challenges the legal sufficiency of numerous findings of fact. In an appeal from a judgment rendered after a bench trial, the trial court's findings of fact have the same weight as a jury's verdict, and we review the legal sufficiency of the evidence used to support them just as we would review a jury's findings. *MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 663 n.3 (Tex. 2009) (citing *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994)). A legal sufficiency review requires that we consider all of the evidence in the light most favorable to the finding to determine whether a reasonable fact finder could have formed a firm belief or conviction that the finding was true. *In re S.M.L.*, 171 S.W.3d 472, 476 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (citing *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). In doing so, we assume the fact finder resolved disputed facts in favor of the finding if a reasonable fact finder could do so, and we disregard facts in favor of the finding if a reasonable fact finder could have disbelieved those facts or found they lacked credibility. *In re S.M.L.*, 171 S.W.3d at 476. We must also be mindful of any undisputed evidence contrary to the finding and consider that evidence in our analysis. *Id.*

In making a sufficiency of the evidence evaluation, we accept the premise that the trier of fact is the sole judge of the credibility of the witnesses and of the weight given their testimony and is free to resolve any inconsistencies in the evidence. *Iliff v. Illif*, 339 S.W.3d 74, 83 (Tex. 2011). As a reviewing court, we may not substitute our judgment for that of the fact finder, so long as the evidence falls within the zone of reasonable disagreement. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

That being said, we note that most appealable issues in family law cases are reviewed under an abuse of discretion standard. *Slicker v. Slicker*, 464 S.W.3d 850, 857 (Tex. App.—Dallas 2015, no pet.). This standard applies to the granting of a divorce, *In re Marriage of C.A.S.,* 405 S.W.3d 373, 382 (Tex. App.—Dallas 2013, no pet.); decisions affecting conservatorship and support, *In re B.M.*, 228 S.W.3d 462, 464 (Tex. App.—Dallas 2007, no pet.); the division of the marital estate, *Murff v. Murff*, 615 S.W.2d 696, 698-99 (Tex. 1981); and the allocation of debts incurred during the marriage. *Id.* Under an abuse of discretion standard, a trial court errs when it acts arbitrarily and unreasonably, or without any reference to guiding rules and principles. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). Generally, there is no abuse of discretion where there is some evidence of a substantive and probative character to support the trial court's decision. *In the Marriage of Vick*, No. 07-15-00019-CV, 2016 Tex. App. LEXIS 11975, at *3 (Tex. App.—Amarillo Nov. 3, 2016, no pet.) (mem. op.). Where an abuse of discretion standard is applicable, challenges to the sufficiency of the evidence do not constitute independent grounds of error but are relevant factors in determining whether the trial court abused its discretion. *Moore v. Moore,* 383 S.W.3d 190, 198 (Tex. App.—Dallas 2012, pet. denied); *Boyd v. Boyd*, 131 S.W.3d 605, 611 (Tex. App.—Fort Worth 2004, no pet.).

Regarding division of the marital estate, the trial court's division must be just and right, having due regard for the rights of each party and their child. TEX. FAM. CODE ANN. § 7.001 (West 2006). In that regard, while the division of the marital estate must be equitable, it does not have to be mathematically equal. *Dawson-Austin v. Austin*,

968 S.W.2d 319, 324 (Tex. 1998); *Hrncirik v. Hrncirik*, No. 07-15-00001-CV, 2016 Tex. App. LEXIS 9661, at *6 (Tex. App.—Amarillo Aug. 30, 2016, no pet.) (mem. op.).

In dividing the marital estate, the trial court has broad discretion and we must presume that it exercised that discretion properly. *Murff*, 615 S.W.2d at 698-99. Accordingly, "the appellant bears the burden to show from the record that the division was so disproportionate, and thus unfair, that it constitutes an abuse of discretion." *O'Carolan v. Hooper*, 414 S.W.3d 288, 311 (Tex. App.—Austin 2013, no pet.).

ANALYSIS

Initially, we address certain contentions raised but not designated as issues. Larry contends the first page of the *Final Decree of Divorce* contains clerical errors. Specifically, he contends the designation of himself as "Respondent" and Yvonne as "Petitioner" are incorrect and that the style of the case omits the name or initials of their child. This court has the power to modify the judgment of the court below to make the record speak the truth when we have the necessary information to do so. *See Jordan-Nolan v. Nolan*, 07-12-00431-CV, 2014 Tex. App. LEXIS 8159, at *9 (Tex. App.—Amarillo July 28, 2014, no pet.) (mem. op.) (citing *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993)). We agree that because Larry filed for divorce before Yvonne (albeit on the same day) and the cases were consolidated into the earlier filed cause of action, the decree should be modified to reflect him as Petitioner and Yvonne as Respondent. As to omitting the name or initials of their child, the style of the case in the decree of divorce appearing at page 124 of the clerk's record clearly includes "AND IN THE INTEREST OF JOSHUA JEAN-KAINOA LEPAGE-SULLIVAN, A CHILD." Accordingly, no modification is necessary to properly state the name of the child.

SECTION I—SUFFICIENCY OF THE EVIDENCE

ISSUE ONE

We begin with Larry's first contention that the trial court erred in dividing his Fidelity Investments 403(b) retirement account by finding the balance to be $52,532.60. He contends this figure inflates the correct total by $20,000. He surmises that the amount could be the result of a typographical error. We agree. Yvonne was awarded one-half of Larry's retirement account but there is no evidence to support the fact that, on the day of divorce, the balance of that account was $52,532.60. Larry testified at the final hearing that the account balance was $32,530.60. Yvonne's disposition proposal, which was introduced into evidence as Respondent's Exhibit 3, also provides that the balance of the account was $32,530.60, exactly $20,000 less than the amount recited in paragraph 11.a. of the trial court's *Additional Findings of Fact and Conclusions of Law*. Because the record only supports awarding Yvonne one-half of $32,532.60, we conclude that finding 11.a., which provides "Fidelity 403(b) account held in the name of Husband - 52.530.60," is a typographical error and it should be modified to reflect the sum of $32,532.60.[12]

ISSUE TWO

Larry next asserts the trial court erred in understating Yvonne's net monthly resources. Yvonne testified that her income consisted of $1,125 per month from her pension and $1,557 per month in social security old age benefits. Larry contends her

---

[12] In his disposition proposal, Larry contends Yvonne was entitled to one-half of only $24,623.50. In his prayer, he requests that the value of the account for purposes of a Qualified Domestic Relations Order be "the difference between its value on the date of the marriage and the date the parties ceased to live together as husband and wife." Larry does not argue the point in his brief and a request for relief in a prayer is insufficient to review alleged error.

net resources should include $500 she receives in monthly rent from her two adult sons and the $966 she receives in social security child benefits as their son's representative.

The Texas Legislature has adopted child support guidelines intended to guide the trial court in determining an equitable amount of child support. TEX. FAM. CODE ANN. § 154.121 (West 2014). The amount of periodic child support established by the guidelines in effect at the time of the hearing is presumed to be reasonable, and an order of support conforming to the guidelines is presumed to be in the best interest of the child. *Id.* at § 154.122. The child support guidelines are specifically designed to apply to situations in which the obligor's net resources are not greater than $7,500. *Id.* at § 154.125 (West Supp. 2016). In such situations, where the trial court is establishing the amount of periodic child support for one child, the trial court is to presumptively apply a factor of twenty percent to the "net resources" of the *obligor*, as determined by the Texas Family Code. *Id.* at §§ 154.062, 154.125(b). The Family Code lists the sources for calculating net resources for child support. *Id.* at § 154.062(b). Net rental income is listed as one of those resources. *Id.* at (b)(4).

The trial court may order periodic child support payments in an amount other than that established by the guidelines if evidence rebuts the presumption that application of the guidelines is in the best interest of the child and justifies a variance from the guidelines. *Id.* at § 154.123(a) (West 2014). In determining whether application of the guidelines would be unjust or inappropriate under the circumstances, the trial court shall consider evidence of the amount of the *obligee's* net resources, including the earnings potential of the obligee if the actual income of the obligee is significantly less than what the obligee could earn due to intentional unemployment or

underemployment. *Id.* at § 154.123(b)(5). The trial court should further consider any increase or decrease in the income of the obligee attributable to the property or assets of the obligee. *Id.*

However, where the obligor has not rebutted the presumption that the periodic child support payments are reasonable and in the best interest of the child, the net resources of the *obligee* are not relevant to determining the amount of child support and the trial court does not err by failing to consider the obligee's net resources. Because Larry has not rebutted the presumption that his child support obligation, based on twenty percent of his net resources, is unjust or inappropriate under the circumstances, the rent collected by Yvonne from her adult sons was not relevant to determining Larry's child-support liability. As to receipt of social security benefits as the representative of the child, Larry has not cited us to any authority and we have found none that requires an obligee's net resources to include social security benefits payable to the obligee as the child's representative. Therefore, based on the record, the trial court did not abuse its discretion in its calculation of Larry's periodic child support obligation. Issue two is overruled.

ISSUE THREE

In his brief and supplemental brief, Larry is adamant that he repudiated any agreement on conservatorship except for designating Yvonne as having the exclusive right to designate their child's primary residence. The divorce decree includes a section entitled *Agreement of Parties* that provides the decree was approved "as to both form and substance*."* The decree, however, is not signed by Larry or his trial counsel. In fact, the signature line provides "*not approved and not signed.*"

11

At the commencement of the final hearing, Yvonne's counsel announced as follows:

> I do think we agree on conservatorship with primary residence -- joint managing conservatorship, primary residence with [Yvonne]. I think there is an issue as to residence restriction, child support, visitation and property division.

Larry's counsel then confirmed that agreement.

In *Jordan-Nolan*, 2014 Tex. App. LEXIS 8159, at *8-9, the wife contended she did not agree to the contents of the divorce decree and did not sign it, contrary to an acknowledgement contained in the decree. This court agreed and modified the decree by deleting the objectionable provision. *Id.* at 9. Here, because the parties clearly did not agree to all issues, the decree will be modified to delete the paragraph on page 2 of the *Final Decree of Divorce* entitled *Agreement of the Parties.*

As to Larry's objection to the use of the term "exclusive" concerning certain designated parental rights, we address Larry's argument as if no agreement existed save and except Yvonne's right to establish the child's primary residence. The temporary orders granted Yvonne the exclusive right to designate the child's primary residence whereas the final decree added the term "exclusive" to other rights such as the right to make decisions concerning the child's education and the right to receive and give receipt for periodic payments for the support of the child and to hold or disburse those funds for the benefit of the child.

Larry contends there is no evidence that the "exclusive" parental rights awarded to Yvonne in the divorce decree are in the best interest of their child and thus, the trial

court erred in ordering that she have "exclusive" parental rights additional to those granted in the temporary orders.[13] We disagree. Even if we were to agree, for the sake of this argument, that Larry repudiated any agreement on conservatorship, the trial court's appointment of the parties as joint managing conservators was governed by section 153.134 of the Family Code. Under that statute, the court rendering an order appointing joint managing conservators *shall* designate certain rights regarding the child. TEX. FAM. CODE ANN. § 153.134(b) (West 2014). In doing so, the court is to consider the best interest of the child. *Id.* at (a).

Yvonne testified that she and her son moved to Arizona in February 2013 (prior to petitions for divorce having been filed) and that Larry had only visited once for one day in June 2013. Phone communications between Larry and his son were "erratic." Larry was not involved with his son's school or his teachers. Larry testified that meaningful visitation with his son in Arizona was too expensive. He also testified that he could pay the $925 in child support ordered by the court if he did not exercise his visitation rights because he could not afford both.

Inclusion of the word "exclusive" with certain rights assigned to Yvonne does not infringe on Larry's rights as a joint managing conservator. In some instances, granting certain rights to one parent over another necessarily assumes those rights are exclusive to that parent. Furthermore, Larry has not established that assignment of any "exclusive" right to Yvonne prejudiced him as a joint managing conservator.

---

[13] It is noteworthy that in making this argument Larry relies on the temporary orders he alleges he repudiated.

13

Accordingly, the trial court did not abuse its discretion in awarding Yvonne certain "exclusive" rights based on the best interest of the child. Issue three is overruled.

ISSUE FOUR

Larry and Yvonne leased a house in Lubbock, incurring certain liabilities. Larry contends the trial court "mischaracterized the debt on the house lease as have [sic] been incurred by [Yvonne], rather than as community indebtedness."[14] Without any reference to the reporter's record or citation to legal authority, Larry asserts the mischaracterization led to unintended "inequities in the division of assets and liabilities of the marital estate." No authority having been cited to support his assertion, Larry has failed to preserve this point for appellate review. *See* TEX. R. APP. P. 38.1(i); *Moser v. Davis*, 79 S.W.3d 162, 169 (Tex. App.—Amarillo 2002, no pet.). Issue four is overruled.

ISSUE FIVE

By his fifth issue, Larry maintains the trial court erred by listing a royalty interest as part of the community estate. He contends the only evidence presented showed that a royalty payment of approximately $50 per month was inherited by him from his mother and was, therefore, his separate property. The portion of the decree entitled *Division of Marital Estate* awards Larry "as his sole and separate property" . . . "[a]ll oil royalties held in husband's name." Although the royalty interest was awarded under the heading *Division of Marital Estate,* it was clearly awarded as Larry's separate property. Furthermore, a trial court does not abuse its discretion in mischaracterizing property

---

[14] The term "community indebtedness" is an inarticulate, oft-misused phrase, which perpetuates confusion concerning marital liability issues. Under the current legislative concept of divided management and liability of marital property, the focus should be on whether a debt is the legal obligation of the husband, the wife, or both. *See Tedder v. Gardner Aldrich, LLP*, 421 S.W.3d 651, 655 (Tex. 2013). *See also Tom Featherston and Allison Dickson, "Marital Property Liabilities—Dispelling the Myth of Community Debt,"* Vol. 73, No.1 Tex. Bar J. 16 (Jan. 2010).

unless it materially affects a just and right division of property. *See In re Marriage of Moncey*, 404 S.W.3d 701, 706 (Tex. App.—Texarkana 2013, no pet.). Larry was not divested of his separate property royalty interest and he has failed to demonstrate how a mischaracterization, if any occurred, materially affecting a just and right division of property. Issue five is overruled.

ISSUE SIX

Although inartfully presented, Larry contends the trial court erred by ordering him to pay a debt of $2,000 that was incurred by Yvonne. He contends this violates a Rule 11 agreement made in open court at the commencement of the final hearing wherein Yvonne's counsel announced the parties had agreed that "all debts that are held in the name of the Petitioner will be paid by the Petitioner, and debts held in the name of Respondent would be held -- paid by the Respondent."

In the decree under the heading "Division of Marital Estate" and sub-heading "Property to Wife," the trial court awarded Yvonne "the sum of $2,000, payable to [her] from [Larry]." The award further stated that the sum "represent[ed] the child's medical expenses on [Yvonne's] credit card accounts." Larry contends this violates the Rule 11 agreement because it obligates him to pay a debt "held in the name" of the Respondent.

What Larry misses is the critical fact that the trial court did not order Larry to pay Yvonne's credit card debt. Debts incurred during the marriage relationship were divided in a separate portion of the decree—wherein Yvonne was ordered to pay "[a]ll debts, charges, liabilities, and obligations held in [Yvonne's] name, including but not limited to her accounts with Wells Fargo Visa, PayPal MasterCard, and Toys R Us MasterCard."

15

Merely because the trial court may have imprudently explained its reasoning behind that particular decision, it did not violate the Rule 11 agreement. Instead, the trial court merely exercised its broad discretion in dividing the community estate of the parties. Issue six is overruled.

ISSUE SEVEN

Larry next complains of the trial court's "improper reference to facts in decree." Outlining four particular "fact findings," Larry contends those findings are improper because the reader is left to speculate as to how or upon what basis the trial court made those findings. He argues that absence of specific underlying fact findings "does not serve the purposes of Rules 296-299 [of the Texas Rules of Civil Procedure]," because it does not assist the litigant in understanding the basis for the judgment or help to refine or narrow the issues on appeal. Specifically, he complains of the following findings:

- that division of the marital assets and liabilities was a "just and right" division;

- that the provisions in the Final Decree of Divorce pertaining to the child are in the "best interest" of the child;

- that a variance from the standard possession order and the entry of a modified possession order was in the "best interest" of the child; and

- that it is in the child's "best interest" that the custodial parent should bear a portion of the costs and expenses of the non-custodial parent's visitation with the child once per quarter.

As stated earlier, the trial court has broad discretion in dividing the marital estate and we presume that it exercised its discretion properly. *Murff*, 615 S.W.2d at 698-99. Other than by issues addressed elsewhere in this opinion, Larry makes only general assertions of error. He does not articulate how his understanding of the basis for the

trial court's decision was compromised or how his ability to refine or narrow the issues on appeal was affected. Furthermore, he does not state how the trial court's decisions were either unjust or an abuse of discretion.

As to the "best interest" findings, the best interest of a child is always the primary consideration of the court in determining issues of conservatorship and possession of and access to the child. TEX. FAM. CODE ANN. § 153.002 (West 2014). "Best interest" is a term of art encompassing a broad-based, facts-and-circumstances oriented evaluation concerning the physical, psychological, and spiritual well-being of the child. The trial court's decision is to be accorded significant discretion, *In re Lee*, 411 S.W.3d 445, 460 (Tex. 2013) (orig. proceeding), and, as such, the trial court need not issue granulated findings of fact to support that conclusion.

Other than a casual reference that the disputed findings of fact do "not serve the purposes of Rules 296-299," Larry cites no authority to support his contention that the trial court erred in not "setting out facts based on probative evidence to support global conclusions." Just as Larry contends he is left to speculate on the basis of the trial court's findings, we are left to speculate on the particulars of Larry's argument. Without clarity of argument and without any authority to guide this court, we conclude Larry has waived this complaint for appellate review. TEX. R. APP. P. 38.1(i). Issue seven is overruled.

ISSUE EIGHT

By his eighth issue, Larry maintains the trial court erred in refusing to vacate the *Temporary Orders* filed May 23, 2013. He maintains he had the right to repudiate any

alleged agreement prior to entry of the final decree. Because the trial court proceeded to enter a final decree of divorce based on stipulations and evidence presented during the final hearing, Larry has failed to demonstrate how his alleged repudiation of the agreement resulting in the entry of temporary orders was relevant.

To the extent that Larry contends the final decree of divorce was based upon the Rule 11 agreement which he contends to have repudiated, we note that a new Rule 11 agreement pertaining to conservatorship was announced in open court. In that regard, Yvonne's counsel announced to the court, "I do think we agree on conservatorship with primary residence – joint managing conservatorship, primary residence with [Yvonne]." The trial court responded, "[i]n other words . . . there's an agreement as to who's going to designate the primary residence of the child, but everything else in regard to who's – how you're going to see the child, and all those types of things, are still at issue; is that correct?" Larry's trial counsel then announced, "[y]es, sir, Your Honor." Under these circumstances, Larry has not demonstrated an abuse of discretion in the trial court's decision to not vacate the temporary orders. Issue eight is overruled.

ISSUE NINE

Larry's ninth and final no-evidence complaint is that "[a] tautology is not a conclusion of law."[15] Quoted in its entirety, his argument is that "Conclusion of Law 2 (finding that he is entitled to periods of possession pursuant to the modified possession order set forth in the decree of divorce) in the October finding is nothing more than a tautology that adds hardly anything at all to the discussion except that the rights and

---

[15] A tautology is a needless repetition of an idea, statement, or word. *Merriam Webster's Collegiate Dictionary* 1280 (11th ed. 2003).

18

duties therein set out are what they are." Larry makes no effort whatsoever to identify how a tautology amounts to trial court error. Such a bare assertion without legal authority or argument in support thereof waives the complaint from appellate review. *See* TEX. R. APP. P. 38.1(i). *See also Washington v. Bank of N.Y.*, 362 S.W.3d 853, 854-55 (Tex. App.—Dallas 2012, no pet.). Issue nine is overruled.

SECTION II—FUNDAMENTAL ERROR

STANDARD OF REVIEW

Fundamental error is defined as "those instances in which error directly and adversely affects the interest of the public generally, as that interest is declared by the statutes or Constitution of our State, or instances in which the record affirmatively and conclusively shows that the court rendering the judgment was without jurisdiction of the subject matter." *Mack Trucks v. Tamez*, 206 S.W.3d 572, 577 (Tex. 2006) (citing *McCauley v. Consol. Underwriters*, 157 Tex. 475, 304 S.W.2d 265, 266 (1957)).

Fundamental error describes situations in which an appellate court may review error that was neither raised in the trial court nor assigned on appeal. *In re B.L.D.*, 113 S.W.3d 340, 350 (Tex. 2003). The fundamental error doctrine, however, has been called "a discredited doctrine" in light of strong policy considerations favoring preservation of error. *Id.* (citing *Cox v. Johnson*, 638 S.W.2d 867, 868 (Tex. 1982) (per curiam)).[16]

---

[16] Most of Larry's "fundamental error" complaints consist of matters generally reviewed for abuse of discretion.

Larry contends that section 154.133 of the Texas Family Code is unconstitutional as applied to him because it deprives him of a property interest ($711) which *could have* been payable by the Social Security Administration, for the benefit of the child the subject of this proceeding, based on his earnings record, but for Yvonne's election to apply for benefits based on her earnings record.[17]  When Larry was his son's representative, he was receiving $711 in social security child benefits.  He maintains the trial court committed fundamental error in denying him a credit on his child support payments for the value of social security child benefits he used to receive before Yvonne became their son's representative.  He contends he should only be required to pay the difference between his child support obligation of $925 per month and the $711 per month he previously received in child benefits, i.e., $214.

Larry argues the statutory scheme as applied to him "offends the promise of 'substantive' due process" and denies him due process of law.  Through a very lengthy presentation, including cites to out-of-state authorities, Larry urges this court to offset his child support payments by $711 for social security child benefits he previously received.  Unfortunately, Larry misinterprets the statute.

---

[17] Section 154.133 of the Family Code entitled "Application of Guidelines to Children of Obligors Receiving Social Security" provides as follows:

> [i]n applying the child support guidelines for an obligor who is receiving social security old age benefits and who is required to pay support for a child who receives benefits as a result of the *obligor's receipt* of social security old age benefits, the court shall apply the guidelines by determining the amount of child support that would be ordered under the child support guidelines and subtracting from that total the amount of benefits or the value of the benefits paid to or for the child as a result of the obligor's receipt of social security benefits.

TEX. FAM. CODE ANN. § 154.133 (West 2014).  (Emphasis added).

20

The statute is clearly designed to apply to calculation of an obligor's net resources in determining the amount of child support under the statutory guidelines if the child receives social security benefits as a result of the *obligor's* receipt of old age benefits. *See* § 154.133, *Comment.* Here, both Larry and Yvonne receive old age benefits; however, the child receives his benefits through Yvonne because she receives a higher amount than Larry in old age benefits.

During cross-examination, Larry testified he had not found any case in which an obligor had received credit for social security child benefits when those benefits were paid through the custodial parent. He also acknowledged that the statute does not give the trial court discretion on whether to allow a credit under those circumstances. He further admits that according to federal regulations, he is not the parent currently receiving social security child benefits.

Consequently, as specifically provided by section 154.133 of the Family Code, Larry, as obligor, cannot avail himself of a reduction in child support for child benefits he no longer receives as his son's representative. There was no fundamental error in the trial court's denial of a credit toward Larry's child support obligation. Fundamental error one is overruled.

FUNDAMENTAL ERROR TWO

Citing section 154.122 of the Family Code (West 2014), Larry argues the statutory presumptions that child support guidelines are reasonable and in the best interest of the child are rebutted by the evidence. He contends the statutory child

support guideline of twenty percent of his net resources is unjust and inappropriate. TEX. FAM. CODE ANN. § 154.125(b) (West Supp. 2016).

The determination of the amount of child support to be paid is left to the sound discretion of the trial court and that decision will not be disturbed on appeal absent a clear abuse of discretion. *In the Interest of R.A.W.*, No. 07-13-00316-CV, 2015 Tex. App. LEXIS 3039, at *18 (Tex. App.—Amarillo March 27, 2015, no pet.) (citing *In the Interest of L.R.P.*, 98 S.W.3d 312, 313 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd)). At the final hearing, Larry testified the statutory guidelines for child support would be unjust and inappropriate and asked the court to consider additional factors listed in section 154.123(b) of the Family Code (West 2014). At the time of the final hearing, Larry was employed by Texas Tech University and receiving a salary of $6,327.78 gross per month, paid over nine months of the year. He also received social security old age benefits of $1,226 per month and approximately $50 in royalty payments per month. He did not provide his net monthly income. He estimated his monthly expenses were approximately $2,642.[18] We find that based on the evidence before the court at the time of the hearing, there was no fundamental error in applying the twenty percent guideline in determining Larry's child support obligation. Fundamental error two is overruled.

FUNDAMENTAL ERROR THREE

Larry alleges fundamental error in the trial court's refusal to acknowledge his repudiation of the Rule 11 agreement that led to entry of the temporary orders. *See*

---

[18] Larry testified to the following expenses: rent $1,150, utilities $400, phone and Internet $175, student loan $404, car payment $283, and car insurance, maintenance, and gas totaling $230.

TEX. R. CIV. P. 11.  Again complaining that the temporary orders should have been vacated because he repudiated them, Larry presents a laundry list of challenges to the trial court's *Temporary Orders* as follows:

- Yvonne's exclusive right to determine the child's primary residence;
- Issuance of a wage withholding order to his employer;[19]
- Sixty-day notice requirement to exercise visitation during school intersessions;
- Detailed restrictions on use and management of property;
- Cost sharing for travel to and from the child's place of residence;
- Detailed provisions for health insurance;
- Other exclusive rights granted to Yvonne;
- Elements of the "parenting plan" including child support, visitation, and unnecessarily restrictive notice requirements;
- Detailed limitations on use or management of marital property; and
- Unagreed-to allocation of tax liabilities and tax refunds.

On April 16, 2013, Larry, an attorney duly licensed in Texas, affixed his signature to the *Report of Associate Judge* later memorialized into *Temporary Orders.*  Larry blames his trial counsel for cajoling him into signing the document and now claims it was "a big mistake" for which he fired his counsel.

In its oral pronouncement, the trial court announced, "[p]arties are presumed to have understood what it was that they were signing, especially in light of the fact that Mr. Sullivan's an attorney."  Larry does not claim he involuntarily signed the document, only that it was "a big mistake."  Moreover, as previously noted, temporary orders are not a Rule 11 agreement subject to repudiation and there is no evidence that the final decree of divorce is based, in whole or in part, upon the Rule 11 agreement Larry purports to have repudiated.  Larry has not established an abuse of discretion by the

---

[19] Section 158.002 of the Family Code provides for suspension of issuance of a withholding order or delivery of that order to an employer until, among other circumstances, the obligor is in arrears for more than thirty days.  TEX. FAM. CODE ANN. § 158.002 (West 2014).  Yvonne testified that Larry did not make temporary child support payments for the months of July, August, and September 2013.  Thus, there was no error in issuance and delivery of the wage withholding order to Larry's employer.

trial court, much less fundamental error in the trial court's refusal to vacate the *Temporary Orders.* Fundamental error three is overruled.

FUNDAMENTAL ERROR FOUR

Relying on the Texas Canons of Judicial Conduct, Larry contends the trial court's delay in entry of the divorce decree for more than a year is tantamount to an abuse of discretion because it contained a Mother Hubbard clause.[20] In making his argument, Larry references the heightened standards of review applicable in parental termination cases. *In re E.N.C.*, 384 S.W.3d 796 (Tex. 2012). We note, however, that those cases and their heightened standard of review are inapplicable to the appellate review of a decree of divorce.

To obtain a reversal for a trial court's delay in rendering judgment, an appellant has the burden to prove harm resulting from the delay. *Lloyds of London v. Walker*, 716 S.W.2d 99, 101 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). Additionally, there is no time limit in which a court must act in rendering judgment. *See id. See generally Hunt Energy Corp. v. Pirtle*, No. 07-96-0103-CV, 1996 Tex. App. LEXIS 2949, at *2-3 (Tex. App.—Amarillo July 12, 1996, orig. proceeding) (declining to grant relief where trial court delayed in entering judgment for more than a year after the jury had returned a verdict). Each case must be reviewed on a case-by-case basis.

Larry maintains the trial court's delay harmed him because the temporary orders were oppressive. In that regard, we note that his child support obligation was not

---

[20] A "Mother Hubbard clause" is a commonly employed decretal phrase indicating that the document in question (e.g., a judgment, decree, or contract) reflects the sole and only agreement between the parties or that it disposes of all claims and controversies existing between the individuals or entities affected by the judgment or decree. *Burns v. Stettner Clinic, Inc.*, No. 07-00-0452-CV, 2000 Tex. App. LEXIS 7947, at *6 (Tex. App.—Amarillo Nov. 27, 2000, no pet.) (mem. op.).

24

significantly different between that ordered in the Temporary Orders ($925 per month) and that ordered in the final decree of divorce ($920.55 per month). Larry argues that the trial court "had reason to know that the temporary orders *could* become oppressive" because his employment was scheduled to change in May of 2014. If Larry believed his temporary child support obligation was overstated due to an actual change in his net resources, he could have requested a timely *de novo* hearing before the referring court challenging the temporary orders rendered by an associate judge under section 201.015(a)(2) of the Family Code (West Supp. 2016). He also could have filed a motion to modify the temporary orders pending entry of a final decree pursuant to section 105.001(a) of the Family Code (West 2014). Finally, he could have pursued a writ of mandamus seeking to compel the trial court to enter a final decree of divorce. *In re Eaton*, No. 02-14-00239-CV, 2014 Tex. App. LEXIS 10726, at *7 (Tex. App.—Fort Worth Sept. 25, 2014, orig. proceeding). Under these circumstances, Larry has not demonstrated any harm resulting from the trial court's refusal to either vacate the temporary orders or enter a final decree of divorce.

Turning to Larry's complaint concerning the incorporation of a Mother Hubbard clause stating that "all relief requested in this case and not expressly granted is denied," we note that the inclusion of such language is generally considered to be harmless. *Thompson v. Stansberry*, No. 12-01-00052-CV, 2002 Tex. App. LEXIS 4508, at *16 (Tex. App.—Tyler June 21, 2002, pet. denied). Even assuming the trial court erred in including this language in the decree of divorce, any such error was harmless. Fundamental error four is overruled.

<u>CONCLUSION</u>

The *Final Decree of Divorce* is modified as follows: Larry Sullivan is designated as Petitioner and Yvonne as Respondent throughout the decree including the style of the case; on page 2 of the *Final Decree of Divorce*, the paragraph entitled *Agreement of the Parties* is deleted in its entirety; Yvonne remains entitled to one-half of the balance of Larry's Fidelity Investments 403(b) retirement account, which is $32,530.60 and not $52,530.60; and the *Final Decree of Divorce* is affirmed in all other respects.


Patrick A. Pirtle
Justice

26